COMMUNITY SAVINGS AND LOAN ASSOCIATION, a Wisconsin Corporation, et al., Plaintiffs,

v.

FEDERAL HOME LOAN BANK BOARD, et al., Defendants.

MUTUAL SAVINGS AND LOAN ASSOCIATION OF WISCONSIN, Plaintiff,

v.

FEDERAL HOME LOAN BANK BOARD et al., Defendants.

Civ. A. Nos. 73–C–121, 73–C–146.

United States District Court, E. D. Wisconsin.

Aug. 13, 1975.

As Amended Sept. 3, 1975.

Clifford C. Kasdorf, Milwaukee, Wis., for plaintiffs in Civ. No. 73–C–121.

Edward A. Dudek, Milwaukee, Wis., for plaintiff in Civ. No. 73–C–146.

W. Stuart Parsons, Milwaukee, Wis., for defendant First Federal Savings and Loan Assn. (Both Actions).

Daniel J. Goldberg, Asst. Gen. Counsel, Federal Home Loan Bank Bd., Washington, D. C., for defendants Federal Home Loan Bank Board, Bomar and Perry (Both Actions).

## DECISION AND ORDER

REYNOLDS, Chief Judge.

In these consolidated actions, plaintiffs seek judicial review of the October 3, 1972, decision of defendant Federal Home Loan Bank Board ("the Board") which granted defendant First Federal Savings and Loan Association of Wisconsin ("First Federal") permission to establish a branch office in the immediate vicinity of the Mayfair Shopping Center in Milwaukee, Wisconsin. Plaintiffs have moved for an order compelling the Board to produce certain documents. For the reasons hereafter indicated, the motion is granted.

The facts alleged in the complaints are as follows: On June 11, 1968, First Federal filed an application for permission to establish a branch office in the immediate vicinity of the Mayfair Shopping Center in Milwaukee, Wisconsin. The application indicated that within the proposed branch office's service area, there were ten savings and loan offices and also that two other savings and loan offices were immediately adjacent thereto. This application was disapproved on the grounds that there was insufficient evidence of need for the proposed branch office and of a reasonable prospect for success without undue injury to existing institutions. Resolution No. 22,291 (November 21, 1968).

First Federal requested a hearing on the application, which was conducted on February 3, 5, and 6, 1969. On April 24, 1969, the Board again denied the application, citing the same reasons set out above. Resolution No. 22,757. A petition for reconsideration filed by First Federal on May 3, 1969, was denied.

Less than three years later, on February 25, 1972, First Federal filed another application for permission to establish a branch office near the Mayfair Shopping Center. The application stated that the proposed site and service area were essentially the same as those in the first application except that one boundary of the service area had been adjusted. The application also indicated that some nine savings and loan associations operating eleven facilities were within or immediately adjacent to the boundaries of the proposed service area.

Pursuant to the Board's regulations, protests were filed by the plaintiffs and West Federal Savings and Loan Association, and oral argument was conducted at the request of the protestants.

On October 3, 1972, the Board conditionally approved First Federal's application, determining in part that—

"* * * a necessity exists for the proposed branch office in the community to be served, that there is a reasonable probability of its usefulness and success, and that said branch can be established at such locality without undue injury to the protestants and any other properly conducted existing local thrift or home-financing institutions * * *." Resolution No. 72–1161.

Plaintiffs assert that the Board's approval of the application was (1) arbitrary, capricious, and an abuse of discretion because it was contrary to the established record, (2) arbitrary, capricious, and an abuse of discretion because of the failure of the Board to address itself to the anticompetitive effect, and (3) a denial of plaintiffs' due process rights because the Board did not issue specific findings of fact and a reasoned opinion.

The plaintiffs filed a request for the production of documents pursuant to

Rule 34 of the Federal Rules of Civil Procedure. They wanted to examine the complete record pertaining to First Federal's 1968 and 1972 applications for permission to establish a branch office. The documents required included all materials of any kind prepared by any of the Board's staff, agents, and employees for consideration by the Board in connection with the applications. The Board responded by providing a large portion of the material requested, approximately 962 pages. However, the Board stated that certain categories of information would not be presented for inspection. Specifically, the Board refused to produce: documents, or portions thereof, which consisted of recommendations, evaluations, analyses, and opinions prepared by Board staff members and supervisory agents; the legal opinion provided by the office of the general counsel; and confidential financial data respecting the applicant. The Board's unwillingness to produce this material (except the confidential financial data which plaintiffs state they do not want) gave rise to plaintiffs' motion now before the Court seeking an order compelling production.

■■ A motion for discovery is addressed to the discretion of the trial court. *Thomas v. Nuss*, 353 F.2d 257 (6th Cir. 1965); *Benning v. Phelps*, 249 F.2d 47 (2d Cir. 1957). In ruling on such a motion, courts have consistently adopted a liberal interpretation of the discovery rules. *Burns v. Thiokol Chemical Corporation*, 483 F.2d 300, rehearing en banc denied, 485 F.2d 687 (5th Cir. 1973); *Roto-Finish Company v. Ultramatic Equipment Company*, 60 F.R.D. 571 (N.D.Ill.1973). In fact, the rule has developed that federal district courts will permit discovery of any matter, not privileged, which is relevant to the pending action. *In re Penn Central Commercial Paper Litigation*, 61 F.R.D. 453 (S.C.N.Y.1973); *Verrazzano Trading Corp. v. United States*, 349 F.Supp.

1401, 1405 (Cust.Ct.1972). See also 27 C.J.S. Discovery § 20, at 46 (1959).

Although there can be no doubt that the material which the plaintiffs seek is relevant to this action, the Board has argued that this material is privileged and, therefore, not available for discovery. Specifically, the Board asserts that the documents in question are protected by executive privilege and that the opinion provided by the office of the general counsel is protected by the attorney-client privilege.

■■ The privilege which attaches to government documents, such as advisory opinions and evaluations, is not absolute. *Kaiser Aluminum & Chemical Corporation v. United States*, 141 Ct.Cl. 38, 157 F.Supp. 939, 946 (Ct.Cl.1958), approved in *Environmental Protection Agency v. Mink*, 410 U.S. 73, 86–87, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973). Where the privilege asserted is not absolute, a court must see whether "production of the contested document would be 'injurious to the consultative functions of government that the privilege of non-disclosure protects.' *Kaiser Aluminum & Chemical Corp., supra*, 141 Ct.Cl. at 49 [157 F.Supp.], at 946. * * *" *Environmental Protection Agency v. Mink, supra*, 410 U.S. at 87, 93 S.Ct. 827, at 836.

■ Assuming that those portions of the documents in question which contain opinions, evaluations, and recommendations fall within a privileged category, this Court concludes that the disputed items are, nevertheless, properly subject to discovery. The defendant Board points out that its own regulations define intra-agency memoranda to be confidential and privileged. 12 C.F.R. § 545.14(a)(3) and 12 C.F.R. § 505.6(a). Furthermore, the Board argues that these regulations should not be disregarded because to do so would have the effect of inhibiting honest and open discussion between agency heads and their subordinates concerning administrative

action. This Court agrees that open and frank discussion within an agency is highly desirable. However, it is not necessary to uphold the Board's regulations because no harm will befall the consultative process of the Board if the documents in question are revealed to plaintiffs. In a number of cases, the Comptroller of the Currency[1] has revealed, voluntarily or pursuant to court order, information similar to that sought by the plaintiffs in this action. More recent cases where this disclosure has occurred include *Camp v. Pitts*, 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973); *First National Bank of Fairbanks v. Camp*, 465 F.2d 586 (D.C.Cir. 1972); *Merchants & Planters Bank of Newport, Arkansas v. Smith*, 380 F. Supp. 354 (E.D.Ark.1974); *First National Bank of Fayetteville v. Smith*, 365 F.Supp. 898 (W.D.Ark.1973), reversed on other grounds, 508 F.2d 1371 (8th Cir. 1974); *First National Bank of Southaven v. Camp*, 333 F.Supp. 682 (N. D.Miss.1971), aff'd, 471 F.2d 1322 (5th Cir. 1973); and *First Citizens Bank and Trust Company v. Southern National Bank of North Carolina*, 329 F.Supp. 186 (E.D.N.C.1971). See also, *Washington Mutual Savings Bank v. Federal Deposit Insurance Corporation*, 347 F. Supp. 790 (W.D.Wash.1972), aff'd, 482 F.2d 459 (9th Cir. 1973). Despite these cases, there has been no claim that the Comptroller of the Currency suffers from a lack of open and honest discussion regarding the decisions which that agency should reach. In light of this situation, this Court does not believe that any ill effects will result from allowing plaintiffs to see the information in question.

Before leaving the issue of executive privilege, it is necessary to note that there are also positive reasons for granting plaintiffs' motion. The doctrine of privilege contains the potential for misuse. *Carr v. Monroe Manufacturing Co.*, 431 F.2d 384 (5th Cir. 1970), *cert.* denied 400 U.S. 1000, 91 S.Ct. 456, 27 L.Ed.2d 451 (1971). The secrecy protected by the privilege can be used to cover up mischievous conduct or incompetency. In a case like the present, where the agency has completely changed its position on an application within a relatively short period of time, public confidence in the soundness of the decision-making process will be promoted by allowing plaintiffs to see the information they request.

■■ The next question involves the opinion of the General Counsel. The Board asserts that the relation of attorney and client exists between an agency or department of the United States and its staff attorneys. Therefore, the Board argues that the opinion of the General Counsel is protected from discovery by the attorney-client privilege. The Board's definition of this privilege is too broad in scope. The attorney-client privilege does not extend to correspondence from an attorney to a client when that correspondence contains advice based upon public information rather than confidential information provided by the client. *Congoleum Industries, Inc. v. GAF Corporation*, 49 F.R. D. 82, 85–86 (E.D.Pa.1969), aff'd, 478 F.2d 1398 (3rd Cir. 1973). In this case, it appears that the information which was sent to the office of the General Counsel consisted almost entirely of material which was in the public record. Therefore, the General Counsel's opinion is not protected from discovery by the attorney-client privilege.

■ There is also an independent basis for holding that plaintiff is entitled to discovery. This basis stems from the Supreme Court's decision in *Citizens to Preserve Overton Park v. Volpe*, 401

---

[1]. The analogy to the Comptroller of the Currency is useful because that agency has the authority to issue charters and approve branch applications for national banks, whereas the Board performs the same tasks for federally chartered savings and loan associations.

U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). In *Overton Park*, the Supreme Court delineated the standard of judicial review in cases which involve informal agency actions, such as the approval of this branch application.[2] The aspect of the standard of review relevant to this action is the portion which requires a reviewing court to base its decision on the full administrative record before the agency at the time the decision was made. *Overton Park, supra,* at 420, 91 S.Ct. 814. The purpose of the Court's examination of the record is not to re-evaluate the substantive result which the agency decision-maker reached. Rather the Court is to determine if the decision-maker considered all the factors required by the requisite statute. If this were done, the Court would determine whether the decision reached was arbitrary and capricious. *Overton Park, supra.*

In the present case, the operative statutes require that the Board, in considering an application, determine whether there is a need for the office, whether there is a reasonable probability of its usefulness and success, and whether the office can be established without undue injury to existing institutions. 12 U.S. C. § 1464(e) (1970). In order for this Court to determine whether or not the Board considered these factors, the Court must have before it the same information which was before the agency decisionmaker at the time he or she reached the decision in question. This means that the Court must examine the information which the plaintiffs seek to discover. *Silva v. Lynn*, 482 F.2d 1282, 1283 (1st Cir. 1973); *Appalachian Power Co. v. Environmental Protection Agency*, 477 F.2d 495, 507 (4th Cir. 1973), and cases cited therein.

This Court believes that its scrutiny of the information in question would be greatly aided by an adversary presentation of the issues. The role of the Court in our judicial system is to reach decisions after evaluating the evidence presented by both sides. Therefore, it could best be determined whether the Board considered the requisite issues after hearing the arguments of counsel on this subject. To accomplish this it is necessary that plaintiffs' attorneys be allowed to examine the information which they request under a protective order.

It is therefore ordered that plaintiffs' motion for an order compelling discovery be and it hereby is granted.

It is further ordered that the defendant Board provide plaintiffs with all of the information requested (excluding the confidential financial data which plaintiffs do not desire) within thirty days of the filing date of this decision and order.

---

2. The *Overton Park* standard is applicable to this case because the Board's action is not rulemaking as defined in 5 U.S.C. § 553 (1970), nor is it adjudication in the absence of a statutory hearing requirement. 5 U.S. C. § 554 (1970). The hearing which the Board provides is based on its own rules. No hearing is required by 12 U.S.C. § 1461 (1970) et seq., the sections from which the Board's authority to consider and approve branch applications is derived.