**NALCO CHEMICAL COMPANY,
Plaintiff,**

v.

**HYDRO TECHNOLOGIES, INC., Daniel
H. Girmscheid and Thomas S.
Broge, Defendants.**

No. 92–C–412.

United States District Court,
E.D. Wisconsin.

July 16, 1993.

Piette & Jacobson by Ronald L. Piette and William J. Richards, Milwaukee, WI, Stephen N. Landsman and J. Michael Newton, Nalco Corporate Counsel, Naperville, IL, for plaintiff.

Quarles & Brady by John A. Rothstein, Milwaukee, WI, for defendants.

## DECISION and ORDER

MYRON L. GORDON, Senior District Judge.

Presently before the court are five motions all filed by Nalco Chemical Company [Nalco]. They are: (1) Nalco's "Motion Pursuant to F.R.Civ.P. 60(B) for Relief from Court's Partial Denial of Motion for Preliminary Injunction" [Rule 60(b) motion], (2) Nalco's "Motion for Protective Order Pursuant to Rule 26(C)" [protective order motion], (3) Nalco's "Motion to Compel Discovery" [motion to compel], (4) Nalco's "Motion for Leave to File Second Amended Complaint" [motion to amend], and (5) Nalco's "6.01 Motion for Review of Defendants' Costs" [cost motion].

The Rule 60(b) motion, the protective order motion, and the cost motion will be denied. The motion to compel will be granted in part and denied in part. The motion to amend will be granted to the extent recited in this decision and order.

The general facts of the dispute between Nalco and Hydro Technologies, Inc. [Hydro], Daniel H. Girmscheid, and Thomas S. Broge [collectively, the defendants] have been described at length in other decisions involving this action and will not be repeated here. Many of Nalco's claims against the defendants have been dismissed, and only eight claims remain against the defendants. *See Nalco Chemical Co. v. Hydro Technologies, Inc.*, 148 F.R.D. 608 (E.D.Wis.1993). The eight claims consist of three claims alleging violations by the defendants of the Uniform Trade Secrets Act, Wis.Stat. § 134.90 (one claim against each defendant), three claims alleging violations by the defendants of Wis. Stat. § 134.01 (one claim against each defendant), and two claims for breach of fiduciary duty (one claim each against Mr. Broge and Mr. Girmscheid). *Id.* at 611. Nalco's present motions under consideration in this decision and order primarily relate to its three trade secret claims.

## I. NALCO'S RULE 60(B) MOTION

In its Rule 60(b) motion, Nalco requests preliminary injunctive relief. Nalco grounds this motion on its theory that additional evidence discovered since this court entered a preliminary injunction in favor of Nalco in May 1992 (later reversed by the court of appeals) demonstrates that the defendants misappropriated Nalco trade secrets in violation of Wis.Stat. § 134.90 thus entitling Nalco to preliminary and permanent injunctive relief.

### A. Procedural Matters

■ I begin by noting that Rule 60(b), Federal Rules of Civil Procedure, does not provide a basis for Nalco bringing its present Rule 60(b) motion. Rule 60(b), Federal Rules of Civil Procedure provides, in part, that "[o]n motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding...." However, the grant or denial of a preliminary injunction motion is interlocutory in nature. *See, e.g., Waco–Porter Corp. v. Tubular Structures Corp. of America,* 222 F.Supp. 332, 333 (S.D.Cal.1963). Rule 60(b) applies only to final orders and not to interlocutory orders. *See Huk–A–Poo Sportswear, Inc. v. Little Lisa, Ltd.,* 74 F.R.D. 621, 623 (S.D.N.Y.1977).

■ Nevertheless, this court can consider Nalco's application "under its continuing plenary power over its interlocutory orders." *Id.* (citing *John Simmons Co. v. Grier Bros.,* 258 U.S. 82, 42 S.Ct. 196, 66 L.Ed. 475 (1922); *Ideal Toy Corp. v. Sayco Doll Corp.,* 302 F.2d 623 (2d Cir.1962)). *See also F.W. Kerr Chemical Co. v. Crandall Associate, Inc.,* 815 F.2d 426, 429 (6th Cir.1987) ("The proper pretrial procedure is that when a ruling is made on a motion for preliminary injunction, an aggrieved party must either file a timely interlocutory appeal or request reconsideration on the basis of changed or otherwise unforeseen and unforeseeable circumstances."). Nalco's renewed request for

a preliminary injunction is based on the discovery of new evidence which purports to meet the requirement of "changed or otherwise unforeseen and unforeseeable circumstances."

When a party requests reconsideration of a previous interlocutory order such as one denying preliminary injunctive relief, the court is "free in its discretion to grant a reargument based either on all the evidence then of record or only the evidence before the court when it rendered its interlocutory decision, or to reopen the case for further evidence." *Marconi Wireless Telegraph Co. of America v. United States*, 320 U.S. 1, 48, 63 S.Ct. 1393, 1415, 87 L.Ed. 1731 (1943). *See also Triumph Hosiery Mills, Inc. v. Triumph Int'l Corp.*, 191 F.Supp. 937, 938 (S.D.N.Y. 1961), *rev'd*, 308 F.2d 196 (2d Cir.1962). In order to resolve Nalco's present Rule 60(b) motion for a preliminary injunction, I will consider the entire record to date, including the briefs, affidavits and deposition testimony provided to the court by all the parties in connection with such motion.

In its Rule 60(b) motion, Nalco requests "that the court schedule an evidentiary hearing regarding the authenticity of the documents, the truthfulness of the defendants' pleadings, and defendants' testimony and Nalco's entitlement to further injunctive relief." Notwithstanding this request, I believe the record has been adequately developed to enable the court to decide the present motion, and, therefore, I do not find it necessary to hold an additional preliminary injunction hearing. *See Triumph Hosiery*, 191 F.Supp. at 940–41 (deciding renewed application for preliminary injunction without an additional preliminary injunction hearing).

My decision not to hold another preliminary injunction hearing is bolstered by considerations of judicial economy. Trial is scheduled to commence in approximately two months at which time both Nalco and the defendants will have another opportunity to present evidence, and argue, the merits for and against Nalco's request for injunctive relief based on its trade secret claims. Based on the record developed to date, the court will make its findings of fact and conclusions of law in accordance with Rule 52(a), Federal Rules of Civil Procedure.

**B. Factual Background**

Nalco's Rule 60(b) motion, renewing its request for a preliminary injunction, is grounded on its claims that the defendants have violated the Uniform Trade Secrets Act, Wis.Stat. § 134.90. Nalco claims that the defendants misappropriated trade secrets from Nalco thus entitling Nalco to a preliminary injunction enjoining the defendants from conducting their business to the extent that their business depends on the use of the allegedly pirated Nalco trade secrets.

In support of its Rule 60(b) motion, John Stewart, Nalco's district manager for its Watergy Division G–14 headquartered in Waukesha, Wisconsin, avers that he returned home from work on January 4, 1993, to find 565 documents [the 565 documents] stuffed in his mailbox apparently by an anonymous source. The 565 documents are now filed under seal with the court. Nalco contends that included within these 565 documents are items that are Nalco trade secrets that the defendants misappropriated. In addition to alleged trade secrets included within the 565 documents, Nalco asserts that it has received documents in discovery from the defendants which are also Nalco trade secrets.

A review of the 565 documents indicates that most of them belong to Hydro or its president, Mike Griffin. The only documents that might qualify as Nalco trade secrets (allegedly misappropriated by the defendants) may be categorized as follows: (1) Nalco product bulletins; (2) Nalco confidential product profiles; (3) Nalco personal service reports; and (4) a 1992 Nalco P–25 report for Nalco's Wisconsin Watergy District G–14. Nalco also claims that additional P–25 reports and "call reports" obtained in discovery are trade secrets.

Nalco product bulletins are just what they sound like. They are informational flyers given to customers describing the attributes of particular Nalco products. The product bulletins may include descriptive information on some or all of the following topics: product benefits, principal uses, general description, disposal, shipping, feeding, handling and

storage, application and safety practices. *See* Exhibit # 9, Appendix to Defendants' Brief in Opposition to Rule 60(b) motion [Defendants' Appendix]. Product bulletins can be obtained simply by writing to Nalco and asking for such information. *See* Exhibit # 14, Defendants' Appendix, deposition of Nalco corporate spokesman Douglas Roberts at 4–6.

Nalco confidential product profiles are, for the most part, nothing more than Nalco product bulletins in a different form. The primary difference between the two documents is their names and the order within the given document that the attributes of a particular Nalco product are described. Nalco product bulletins carry a "Product Bulletin" designation, whereas Nalco confidential product profiles carry a "Confidential Product Profile" designation. Confidential product profiles may include descriptive information on some or all of the following topics: general description, handling and storage, shipping, application information, safety practices, dosage determination, control test and environmental properties. While product bulletins are not identical to confidential product profiles, the information contained in the two documents is virtually identical. *Compare* Exhibits # 9 and # 10, Defendants' Appendix. Information included in confidential product profiles that is not also included in the corresponding product bulletin may be found in other public documents such as Material Safety Data Sheets. *See* Exhibit # 12, Defendants' Appendix, deposition of Mike Griffin at 43.

Confidential product profiles are sometimes given to Nalco customers or potential Nalco customers as a marketing gimmick to close a sale. By giving the customer "confidential information," he may be enticed to purchase Nalco products because he believes he is getting some better or different information not routinely provided to other customers. *See* Exhibit # 12, Defendants' Appendix, deposition of Mike Griffin at 40–42. Nalco management is aware, that on occasion, its salesmen have provided certain customers with confidential product profiles. *See* Exhibit # 14, Defendants' Appendix, de-

position of Nalco corporate spokesman Douglas Roberts at 54–55.

Nalco personal service reports are documents that Nalco salesmen leave with their customers after servicing an account. Essentially, they record the condition of the customer's water being treated. *See* Exhibit # 11, Defendants' Appendix. Nalco P–25 reports consist of computer lists of Nalco customers. These customer lists include statistical information on year to date sales for Nalco's customers. Specifically, the computer lists include entries for monthly pounds and year-to-date pounds of water chemicals sold and monthly and year-to-date dollar values of water chemicals sold. *See* Exhibit B, Plaintiff's Reply Brief Appendix [Plaintiff's Appendix]. Nalco "call reports" are daily logs prepared and retained by Nalco salesmen to record which customers or potential customers they have contacted and to record which Nalco services and products, if any, have been provided. *See* Exhibit M, Plaintiff's Appendix.

Mike Griffin, Hydro's president, is responsible for physically obtaining virtually all of the above-described documents alleged by Nalco to be trade secrets misappropriated by the defendants. He avers that after he left the employ of Nalco in 1989, he returned all Nalco documentation requested of him but retained some Nalco materials that he was not asked to return. *See* Exhibit # 12, Defendants' Appendix, deposition of Mike Griffin at 15. The defendants assert in their brief that the materials retained by Mr. Griffin were product bulletins, confidential product profiles, and P–25 reports. Nalco contends that Mr. Griffin did not have permission to keep these items. *See* Exhibit F, Plaintiff's Appendix.

Mr. Griffin states that he received the 1992 P–25 report for Nalco's Wisconsin Watergy District G–14 in the mail in August or September 1992 from an anonymous source. *See* Exhibit # 12, Defendants' Appendix, deposition of Mike Griffin at 20–23, 34–35. As for the remaining alleged documents that are trade secrets—i.e., the personal service reports and the call reports (obtained by Nalco from the defendants in discovery)—there is

no clear evidence in the record explaining how the defendants obtained these items.

## C. Analysis and Conclusions of Law

In its Rule 60(b) motion, Nalco asks this court to enjoin the defendants "from selling all [Hydro] products which were developed using Nalco product information included in the 565 documents" and to enjoin the defendants from participating in "all transactions with customers listed on the P–25 reports for the G–14 and G–33 Districts" turned over to Nalco in discovery. Additionally, Nalco requests that the defendants be ordered "to turn over all other Nalco information in their possession and control" and "be enjoined from all other use of the Nalco trade secrets."

As the party seeking a preliminary injunction, Nalco must demonstrate "(1) some likelihood of succeeding on the merits, and (2) that it has 'no adequate remedy at law' and will suffer 'irreparable harm' if preliminary relief is denied." *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir.1992). If Nalco cannot establish the above two prerequisites, the court's inquiry ends, and the preliminary injunction request must be denied. *Id.* On the other hand, if Nalco clears both thresholds then the court must next consider "(3) the irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied; and (4) the public interest, meaning the consequences of granting or denying the injunction to non-parties." *Id.* at 11–12. *See also West Allis Memorial Hospital, Inc., v. Bowen*, 852 F.2d 251, 253 (7th Cir.1988); *Roland Machinery Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386–88 (7th Cir.1984).

■ In my opinion, Nalco falls well short of clearing the threshold inquiries, and therefore it is not entitled to preliminary injunctive relief. To determine whether Nalco has a likelihood of success on the merits of its trade secret claims, two questions need to be considered for each category of documents it claims are trade secrets. First, whether the documents are in fact trade secrets, and, if

so, whether the named defendants misappropriated them.

Under Wisconsin law, the proper test for determining what is a trade secret is found in Wis.Stat. § 134.90 (1991–92). *Minuteman, Inc. v. L.D. Alexander*, 147 Wis.2d 842, 844, 434 N.W.2d 773 (1989). In addition, the six elements of the Restatement of Torts definition of trade secret, used prior to the enactment of the Uniform Trade Secrets Act in Wisconsin in 1986, may also be used to provide guidance in determining whether something is a trade secret. *Id.*

By statute, "trade secret" is defined as:

information, including a formula, pattern, compilation, program, device, method, technique or process to which *all* of the following apply:

1. The information derives independent economic value, actual or potential, *from not being generally known to,* and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

2. The information is the *subject of efforts to maintain its secrecy* that are reasonable under the circumstances.

Wis.Stat. § 134.90(1)(c) (emphasis added). "Improper means," as opposed to "proper means," includes "espionage, theft, bribery, misrepresentation and breach or inducement of a breach of duty to maintain secrecy." Wis.Stat. § 134.90(1)(a).

According to the Restatement of Torts, the following factors can be considered in determining whether information is a trade secret:

(1) the extent to which the information is known outside of the business of the party asserting trade secret status; (2) the extent to which it is known by employees and others involved in [the party's] business; (3) the extent of measures taken by [the party] to guard the secrecy of the information; (4) the value of the information to [the party] and to [the party's] competitors; (5) the amount of effort or money expended by [the party] in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

Restatement of Torts § 757, comment b (1939). The Wisconsin Supreme Court has noted that "[e]ach of the six factors should indicate that a trade secret exists if the information is to be afforded legal protection." *Corroon & Black–Rutters & Roberts, Inc. v. Hosch,* 109 Wis.2d 290, 297, 325 N.W.2d 883 (1982).

Misappropriation of a trade secret is defined by statute. Wis.Stat. § 134.90(2) provides:

> No person, including the state, may misappropriate or threaten to misappropriate a trade secret by doing any of the following:
> (a) Acquiring the trade secret of another by means which the person knows or has reason to know constitute improper means.
> (b) Disclosing or using without express or implied consent a trade secret of another if the person did any of the following:
> 1. Used improper means to acquire knowledge of the trade secret.
> 2. At the time of disclosure or use, knew or had reason to know that he or she obtained knowledge of the trade secret through any of the following means:
> a. Deriving it from or through a person who utilized improper means to acquire it.
> b. Acquiring it under circumstances giving rise to a duty to maintain its secrecy or limit its use.
> c. Deriving it from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use.
> d. Acquiring it by accident or mistake.

In my opinion, Nalco has little likelihood of succeeding on the merits of its trade secret claims insofar as those claims depend on a finding that its product bulletins, confidential product profiles, personal service reports, call reports and P–25 reports are trade secrets that were misappropriated by the defendants. I believe that these documents are not trade secrets as that term is defined in Wis.Stat. § 134.90(1)(c) and, even if these documents are trade secrets, the defendants did not misappropriate them, as that term is defined in Wis.Stat. § 134.90(2).

The Nalco product bulletins at issue are indisputably freely given to any person who requests such information from Nalco. Thus, product bulletins are not trade secrets because the information contained in them is not "subject of efforts to maintain its secrecy." *See* Wis.Stat. § 134.90(1)(c)(2). The defendants could not have misappropriated the product bulletins in violation of Wis.Stat. § 134.90(2) because anyone can request such documents from Nalco.

Nalco product bulletins and Nalco confidential product profiles contain virtually the same information; therefore confidential product profiles are no more secret than the product bulletins. Furthermore, confidential product profiles are, on occasion, disseminated to Nalco customers thus defeating any trade secret status they might possess because the information also is not "subject of efforts to maintain its secrecy." The fact that Nalco labels its confidential product profiles as "confidential" does not elevate these documents to trade secret status. *See Hosch,* 109 Wis.2d at 295, 325 N.W.2d 883 (holding that confidentiality of information does not equate with trade secret status). There is also no evidence in the record that the defendants misappropriated the confidential product profiles. Mr. Griffin retained these documents (taken from Nalco) after he left their employ believing he was entitled to keep such materials.

The personal service reports are documents left with Nalco customers after a service call. These reports also cannot reasonably be called trade secrets because there is no effort to maintain their secrecy. There is no evidence in the record that the defendants did anything illegal in acquiring these reports.

The call reports, while not disseminated to the public, do not appear to be trade secrets either. The call reports consist simply of daily logs of customers contacted by Nalco salesmen and, in my view, do not contain any information of "independent economic value" to Nalco's competitors who are free to communicate with the same customers contacted by Nalco and can easily do so without the benefit of Nalco's call reports. Furthermore, there is no evidence that they were misap-

propriated, as that term is defined in Wis. Stat. § 134.90(2).

Are the P–25 reports trade secrets? The defendants characterize them as merely customer lists; on the other hand, Nalco depicts these documents as describing "the water treatment program that Nalco has developed for [its] customers, the volume of purchases made by [its] customers and the amount that [its] customers have paid Nalco for the water treatment chemicals." In my opinion, Nalco's description of the P–25 reports is overstated. The P–25 reports are essentially customer lists with some additional information about each customer, namely, the volume and dollar value of water chemicals purchased.

Customer lists are not generally afforded protection as trade secrets. *See Gary Van Zeeland Talent, Inc. v. Sandas,* 84 Wis.2d 202, 209, 267 N.W.2d 242 (1978). The Wisconsin Supreme Court has decided several trade secret cases involving customer lists. *See Minuteman,* 147 Wis.2d at 845, 434 N.W.2d 773 (holding that customer lists may be eligible for trade secret protection under Wis.Stat. § 134.90); *Hosch,* 109 Wis.2d at 299, 325 N.W.2d 883 (holding that customer lists which were not kept locked up were not trade secrets where lists contained names and addresses of policyholders, key personnel to contact, renewal dates and amounts of coverage); *Sandas,* 84 Wis.2d at 211, 267 N.W.2d 242 (holding customer list was not a trade secret where list did not contain complicated marketing data but merely included names of customers); *American Welding & Engineering Co. v. Luebke,* 37 Wis.2d 697, 702–03, 155 N.W.2d 576 (1968) (holding customer list not a trade secret where list did not "contain information concerning the particular types of orders of plaintiff's customers . . . or the potential of particular accounts"); *Abbott Laboratories v. Norse Chemical Corp.,* 33 Wis.2d 445, 465, 147 N.W.2d 529 (1967) (holding customer list was not a trade secret where list did not contain complicated marketing data but merely included names of customers). *See also B.C. Ziegler & Co. v. Ehren,* 141 Wis.2d 19, 27–29, 414 N.W.2d 48 (Ct.App.1987) (holding customer list to be a trade secret where list kept in locked room and only accessible to one or two key employees).

In my opinion, the present set of facts resembles those cases in which the Wisconsin Supreme Court found "customer lists" not to be trade secrets. All of the Wisconsin cases finding customer lists not to be trade secrets were decided before the passage of Wis.Stat. § 134.90 and therefore were analyzed using the six factor restatement trade secret test which still maintains viability even after the passage of Wis.Stat. § 134.90. *Minuteman,* 147 Wis.2d at 844, 434 N.W.2d 773.

An analysis of the information contained in the P–25 reports in light of the six factor restatement trade secret test demonstrates that the P–25 reports are not trade secrets. The information contained in the reports is known, in general, by persons outside of Nalco (e.g. former Nalco employees) [factor # 1], all Nalco salesmen have access to P–25 reports [factor # 2]; no extraordinary efforts have been made by Nalco to protect the secrecy of the information contained in the P–25 reports (e.g. the P–25 reports are not kept under lock and key) [factor # 3], knowing the volume and dollar value of water chemicals used by Nalco customers is not information critical to competing successfully against Nalco [factor # 4], Nalco has not expended extraordinary resources in developing its P–25 reports—they appear to be maintained in the regular course of their business [factor # 5], and the information contained in the P–25 reports could be properly acquired simply by interviewing Nalco customers when calling on them to solicit their business away from Nalco [factor # 6]. Thus, I conclude that the P–25 reports are not trade secrets.

I reach the same conclusion when analyzing the trade secret status of the P–25 reports under Wis.Stat. § 134.90(1)(c). The information in the P–25 reports could be "readily ascertain[ed] by proper means" simply by interviewing Nalco customers during the course of trying to solicit business away from Nalco. I am not impressed with Nalco's argument that the compilation of the number of pounds of water chemicals used, and the dollar value of water chemicals purchased, is information worthy of trade secret

status. Furthermore, Nalco has not introduced compelling evidence that the information contained in the P–25 reports "is the subject of efforts to maintain its secrecy" as revealed by the ease with which the P–25 reports in this case were retained by Mr. Griffin when he left the employ of Nalco.

Even if one were to believe that the P–25 reports qualify as trade secrets, Nalco has not adequately shown that the named defendants have misappropriated these reports. Mr. Griffin took most of the P–25 reports believing he was entitled to keep them. The 1992 P–25 report for the Wisconsin Watergy District G–14 arrived in Mr. Griffin's mail from an anonymous source. While this could be deemed a misappropriation in that this P–25 report arrived "by accident or mistake," *see* Wis.Stat. § 134.90(2)(b)(2.)(d.), I do not find compelling evidence at this juncture that the information contained in this P–25 report was disclosed or used by the defendants to convert Nalco customers to Hydro customers.

In my opinion, the possession by the defendants of the Nalco documents discussed above provides no basis for granting Nalco's Rule 60(b) motion for a preliminary injunction because Nalco has little likelihood of success on the merits of its trade secret claims. I do not believe that Nalco can demonstrate successfully that these documents are trade secrets that were misappropriated by the defendants. Additionally, even if these documents could be treated as trade secrets misappropriated by the defendants, I do not find that Nalco has demonstrated that it does not have an adequate remedy at law. Wis.Stat. § 134.90(4) provides a damage remedy for the misappropriation of trade secrets. Nor has Nalco demonstrated that it will suffer irreparable harm if no injunction is issued between now and the trial date just over two months away. Because of my conclusions above, I do not need to consider factors three and four of the *Abbott Laboratories* four step preliminary injunction test.

■ Accordingly, Nalco's Rule 60(b) motion will be denied. The court also concludes that the defendants are entitled to be compensated for their costs and fees in defending this Rule 60(b) motion. A comprehensive brief and appendix had to be prepared by the defendants to meet Nalco's charges. The court deems the sum of $1000.00 to be a reasonable amount to compensate the defendants for their expenses in defending Nalco's Rule 60(b) motion. *See generally Hall v. Cole*, 412 U.S. 1, 4–5, 93 S.Ct. 1943, 1945–46, 36 L.Ed.2d 702 (1972) ("federal courts, in the exercise of their equitable powers, may award attorneys' fees when the interests of justice so require").

Such compensation shall be paid by Nalco to the clerk of court as terms. A payment of $1000.00 shall be made by Nalco to the clerk of court no later than July 30, 1993 and shall be remitted by the clerk of court to defendants' counsel. In the event Nalco ultimately prevails in this action, it shall not be entitled to recover the terms just described.

### D. Nalco's Request for Sanctions

■ Nalco contends that the defendants Broge and Girmscheid lied at the May 1, 1992, evidentiary hearing held on Nalco's first preliminary injunction motion, and therefore Nalco requests that "the defendants' conduct be dealt with in the strictest fashion." Nalco argues that "severe sanctions should be entered against the defendants for their fabricated testimony."

Nalco contends that the defendants Broge and Girmscheid testified at the May 1, 1993, hearing and at their depositions that they took nothing belonging to Nalco after they resigned and that now the evidence indicates their statements were not true. I disagree. The newly discovered evidence (i.e. the 565 documents) demonstrates that Mr. Griffin, not Mr. Broge or Mr. Girmscheid, took materials belonging to Nalco when he resigned and that he did so believing he was permitted to do so. Furthermore, Mr. Broge and Mr. Girmscheid testified that they did not take Nalco materials *given* to them (e.g. Nalco product bulletins, pricing information, etc.) as opposed to Nalco materials *prepared* by them (i.e. call reports). Thus, I find Nalco's request for sanctions to be baseless, and its request for sanctions will be denied.

## II. NALCO'S PROTECTIVE ORDER MOTION

On January 29, 1993, Nalco filed a protective order motion, pursuant to Rule 26(c), Federal Rules of Civil Procedure, to disallow the deposition requested by the defendants of Mr. Steve Newlin, who is the president of Nalco's International Division. In the alternative, Nalco asks that Mr. Newlin's deposition be postponed until after March 8, 1993. Obviously the latter request is moot, and the court will address only whether to allow the defendants to depose Mr. Newlin.

■ A district court has broad discretion in exercising its powers to fashion or deny a protective order. *Marrese v. American Academy of Orthopaedic Surgeons,* 692 F.2d 1083, 1088 (7th Cir.1982). Rule 26(c), Federal Rules of Civil Procedure, provides in part that:

> Upon motion by a party ... and for good cause shown, the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place....

■ The defendants would like to depose Mr. Newlin concerning his knowledge, when he was a regional manager, of a Nalco salesman stealing a competitor's price book some years ago. The defendants argue that his testimony is relevant to their equitable defense that Nalco is guilty of unclean hands which could possibly preclude Nalco's efforts to obtain injunctive relief. The defendants believe that Mr. Newlin's testimony may provide circumstantial evidence that Nalco was responsible for the theft of the 565 documents from Mike Griffin's car.

Nalco's principal objections to the deposition of Mr. Newlin are: (1) that the deposition of Mr. Newlin is not relevant to the issues in this case; (2) that the defendants have already deposed several other witnesses on the question of a Nalco salesman stealing a competitor's price book and therefore the deposition of Mr. Newlin is designed to harass, oppress and annoy; and (3) Mr. Newlin is often unavailable because of his international travel schedule.

As to Nalco's relevancy objection, under Rule 26(b)(1), Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery, or to the claim or defense of any other party ..." The test for relevance "in the discovery area is an extremely broad one." *AM Int'l, Inc. v. Eastman Kodak Co.,* 100 F.R.D. 255, 257 (N.D.Ill.1981). A request for discovery " 'should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action.' " *Id.* (citing 8 Wright & Miller, *Federal Practice and Procedure* § 2008 (1970)).

Applying this liberal standard, I believe the defendants are entitled to depose Mr. Newlin. The defendants theorize that Mr. Newlin was aware of the alleged theft by a Nalco employee of a competitor's price book a few years ago. His confirmation of that alleged theft would provide circumstantial evidence relevant to the defendants' unclean hands defense as that defense relates to the defendants' theory that the 565 documents were also stolen by Nalco employees or their surrogates. I acknowledge that Mr. Newlin may have little to add on this topic, but he is still subject to deposition.

Along the same lines, Nalco's argument that the defendants have deposed other witnesses about the alleged theft by a Nalco salesman of competitor information is not a basis for barring the defendants from deposing Mr. Newlin. If the defendants believe an additional deposition would be helpful to their defense, they should be entitled to take it. *See, e.g., Blankenship v. Hearst Corp.,* 519 F.2d 418, 429 (9th Cir.1975) (holding that district court's granting of a protective order to movant based on view that proposed deponent's testimony would be repetitious with what movant had learned from other sources was erroneous).

Finally, Mr. Newlin may be a busy man. However, he cannot be so busy that Nalco is unable to make him available for his deposition. I do not find that Mr. Newlin's heavy workload and international travels provide a basis for granting Nalco's protective order. Consequently, Nalco's protective order motion will be denied, and Nalco will be directed to make Mr. Newlin available to the defendants for a deposition no later than August 16, 1993.

■ Each party will bear his or its own costs and attorneys fees with respect to this protective order motion. I reach this conclusion because when Nalco brought this motion in January 1993 there was a legitimate dispute, which the parties could not resolve, over the arrangements for the deposition of Mr. Newlin stemming from his extensive travel schedule. *See* Rules 26(c)(1) and 37(a)(4), Federal Rules of Civil Procedure.

## III. NALCO'S MOTION TO COMPEL

On March 31, 1993, Nalco filed a motion to compel discovery pursuant to Rule 37(a)(2), Federal Rules of Civil Procedure. Pursuant to Rule 37(a)(4), Federal Rules of Civil Procedure, Nalco also seeks attorneys fees and costs of bringing the motion.

■ A motion to compel discovery is addressed to the discretion of the trial court. *Community Sav. and Loan Ass'n v. Federal Home Loan Bank Bd.*, 68 F.R.D. 378, 381 (E.D.Wis.1975). In ruling on motions to compel discovery, "courts have consistently adopted a liberal interpretation of the discovery rules." *Id.*

Nalco's present motion to compel relates to discovery that was requested in Nalco's December 23, 1992, interrogatories, pursuant to Rule 33, Federal Rules of Civil Procedure, and in its December 23, 1992, document production request, pursuant to Rule 34, Federal Rules of Civil Procedure. In Nalco's interrogatories and document production request, the following terms are used: (1) "Territory" defined as "Milwaukee County, Washington County, Racine County, Kenosha County, City of Janesville, City of Beloit, and City of Waukesha"; (2) "Customers" defined as "all customers of the defen-

dants in the Territory"; and (3) "Prospects" defined as "all businesses in the Territory from which the defendants have solicited business, but are not Customers."

■ The first general category of discovery in dispute concerns the identity, services offered to, correspondence with, expenses, profitability and other information relating to all "Customers" and "Prospects" of Hydro located within the "Territory." The following interrogatories and document requests relate to this category of discovery:

*Interrogatory # 1:* Identify the following relating to Customers and Prospects: a. name; b. address; c. primary contact person's name, title and phone number.

*Interrogatory # 2:* Identify all water treatment chemicals and services provided by defendants to Customers and offered by defendants to Prospects. Included without limitation shall be an identification of the product numbers and type of products.

*Interrogatory # 3:* Identify the following profit information relating to Customers and Prospects since January 1, 1992 and February 4, 1992 for Girmscheid and Broge (broken down by individual Customer and Prospect): a. revenues received; b. marginal and fixed expenses associated with such revenues.

*Interrogatory # 4:* Identify the following profit information relating to products and services sold to Customers and Prospects (broken down by product or service): a. sales price and total sales; b. cost of goods sold; c. commissions and selling costs.

*Request # 1:* All Documents referred to in the responses to Interrogatories [#'s 1–4] dated December 23, 1992.

*Request # 2:* All Documents used in preparing responses to the Interrogatories [#'s 1–4] dated December 23, 1992.

*Request # 3:* All Documents exchanged between the defendants regarding the subject matter of this lawsuit.

*Request # 4:* All Documents sent to or received from Customers or Prospects.

*Request # 5:* All Documents which refer to, relate to or record correspondence with Customers or Prospects, proposals to Cus-

tomers or Prospects, agreements with Customers or Prospects, technical information exchanged with Customers and Prospects and business transactions with Customers or Prospects.

*Request # 6:* All Documents exchanged between Broge or Girmscheid, on one hand, and customers or prospective [C]ustomers of Hydro, on the other hand.

*Request # 8:* All files relating to Customers or Prospects.

Nalco argues that the above listed interrogatories and discovery requests are relevant to proving its trade secret claims. Nalco also contends it needs the above information to prove its damages on its trade secret claims by demonstrating that the defendants were unjustly enriched by their misappropriation of Nalco trade secrets. Wis.Stat. § 134.90(4) provides that "[d]amages may include both the loss caused by the violation [of the trade secrets act] and unjust enrichment caused by the violation that is not taken into account in computing the actual loss."

The defendants' principal objection to interrogatories Nos. 1–4 and document requests Nos. 1–6, and 8 is that the terms "Customer" and "Prospect" used in the interrogatories and document requests are defined too broadly: the definitions encompass Hydro customers and prospects who may not be former Nalco customers. I agree with the defendants. The defendants have stated, however, that they are willing "to produce 'customer' and 'prospect' information with respect to all former Nalco customers"; I believe this would constitute reasonable compliance with this aspect of this discovery dispute. Therefore, Nalco's motion to compel will be granted to the extent that the defendants will be directed to answer interrogatories Nos. 1–4 dated December 23, 1992, and respond to document requests Nos. 1–6 and 8 dated December 23, 1992, no later than August 16, 1993. However, in so complying, they need only do so pursuant to the following new definitions: (1) "Customer" shall be defined as "all customers of the defendants in the Territory that were formerly Nalco customers" and (2) "Prospect" shall be defined as "all current Nalco customers in the Territory from which the defendants have solicited

business, but who are not presently customers of the defendants."

■ The second general category of discovery in dispute concerns information relating to the defendants' net worth, assets, liabilities, owner's equity, profits and losses for all years that Hydro has existed. The following interrogatories and document requests fall within this category of discovery:

*Interrogatory # 5:* Identify all amounts paid by Hydro to Broge, the reason for such payments and all business generated by Broge (identifying customer, customer location, products and services sold, and revenues) since the entry of the Preliminary Injunction Order.

*Interrogatory # 6:* Identify all amounts paid by Hydro to Girmscheid, the reason for such payments and all business generated by Girmscheid (identifying customer, customer location, products and services sold, and revenues) since the entry of the Preliminary Injunction Order.

*Interrogatory # 7:* Identify all assets, liabilities and owners' equity for Hydro at the present or the most current reporting period.

*Interrogatory # 8:* Identify Hydro's profits or losses for each of the years it has existed.

*Request # 7:* All financial statements, tax returns, balance sheets and income statements for Hydro, Girmscheid, and Broge.

*Request # 9:* All Documents which relate to, refer to or record compensation to Broge and Girmscheid by Hydro.

Nalco argues that this requested discovery is relevant to the issues of the defendants unjust enrichment as well as to the issue of punitive damages which are provided for pursuant to Wis.Stat. § 134.90(4)(b). The defendants' unimpressive contention is that Nalco is not entitled to the defendants' financial information without first establishing a prima facie case of their entitlement to punitive damages. *See Miller v. Doctor's General Hospital,* 76 F.R.D. 136, 140 (W.D.Okla.1977) ("Where punitive damages are claimed, it has been generally held that the Defendant's financial condition is relevant to the subject

matter of the action and is thus a proper subject of pretrial discovery".).

The defendants also object to interrogatories Nos. 4–8 and document requests Nos. 7 and 9 because they contend this discovery is overbroad in that it is not tailored to those "trade secrets" that Nalco alleges have been misappropriated by the defendants. For example, the defendants argue that if the alleged misappropriated trade secret is a customer list, then Nalco should only be entitled to financial information on sales to customers on that customer list.

I agree with the defendants' criticism that interrogatories Nos. 5–8 and document requests Nos. 7 and 9 are not drafted in such a way so as to link the information requested to the trade secrets that Nalco contends the defendants have allegedly misappropriated. Thus, as drafted, interrogatories Nos. 5–8 and document requests Nos. 7 and 9 are overbroad and require the defendants to produce voluminous amounts of information not relevant to the remaining claims in this lawsuit. Therefore, Nalco's motion to compel will be denied with respect to interrogatories Nos. 5–8 and document requests Nos. 7 and 9 *as they are presently drafted.*

In light of the fact that Nalco's motion to compel will be granted in part and denied in part I will order the parties to bear their own costs and attorneys fees related to Nalco's motion to compel. See Rule 37(a)(4), Federal Rules of Civil Procedure ("If the motion [to compel] is granted in part and denied in part, the court may apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner.").

## IV. NALCO'S MOTION TO AMEND

On June 18, 1993, Nalco filed its motion to amend to add Michael Griffin, president of Hydro, as a defendant in this action. Accompanying its motion is Nalco's proposed second amended complaint. In that complaint, Nalco alleges four claims against Mr. Griffin: (1) a breach of fiduciary duty claim; (2) a Wis.Stat. § 134.90 claim; (3) a conversion claim; and (4) a Wis.Stat. § 134.01 claim. Included in that proposed second amended complaint is what Nalco has

termed a "Supplemental Remedy Against Hydro" requesting that "its claims against Hydro in the [first] Amended Complaint be supplemented to provide that Hydro and its employees be required to return the Nalco Information and that Hydro and its employees be prohibited from taking any further benefit from the Nalco Information."

The defendants responded to Nalco's motion to amend on July 9, 1993, and do not oppose the motion except for Nalco's "Supplemental Remedy Against Hydro." I find that Nalco's "Supplemental Remedy Against Hydro" to be superfluous because any injunctive relief granted to Nalco against Hydro would implicitly require the enjoinment of Hydro employees working in their capacity as Hydro employees. Therefore, Nalco's motion to amend will be granted to the extent that Nalco may file a second amended complaint adding Mr. Griffin as a defendant but may not include its "Supplemental Remedy Against Hydro."

Nalco will be directed to serve and file its second amended complaint no later than July 30, 1993. Nalco's second amended complaint should include those claims from its original and first amended complaints that have not been dismissed plus the new claims against Mr. Griffin included in Nalco's proposed second amended complaint. The defendants may file a responsive pleading in accordance with the Federal Rules of Civil Procedure.

## V. NALCO'S COST MOTION

On June 22, 1993, the clerk of court taxed $5,118.91 in costs against Nalco arising from the defendants' successful appeal of this court's granting of a preliminary injunction to Nalco in May 1992. Nalco objects only to the clerk's taxing of $3,365.11 in deposition costs.

The defendants filed their response to Nalco's motion on July 9, 1993, contending that Nalco's cost motion is untimely pursuant to Rule 54(d), Federal Rules of Civil Procedure, and Local Rule 9.03. Rule 54(d) states:

"Costs may be taxed by the clerk on one day's notice. On motion served within 5 days thereafter, the action of the clerk may be reviewed by the court."

Local Rule 9.03 provides that "A party may move for review of the clerk's decision taxing costs pursuant to Fed.R.Civ.P. 54(d) within five (5) days from taxation." Nalco contends that the defendants were required to have filed their cost motion by June 27, 1993, or at the latest, June 29, 1993, if the weekend of June 26–27, 1993 is excluded. In fact, the clerk taxed costs on June 22, 1993, but Nalco asserts that it did not receive notice thereof until July 1, 1993 and filed its objection on July 7, 1993.

■ The court is unable to locate any case law establishing conclusively whether the five day period for filing a motion opposing the clerk's taxation of costs runs from the date the clerk taxed costs or from the date the party opposing the clerk's taxation of costs receives notice of that decision. The literal language of both Rule 54(d) and Local Rule 9.03 suggests the former interpretation. Some courts have rigidly followed this view but then have simply created a judicial exception to avoid the harshness of the rule where notice is not expeditiously given to the party wishing to appeal the clerk's costs decision. *See, e.g., Neely v. General Electric Co.,* 90 F.R.D. 627, 629 (N.D.Ga.1981). Other courts have noted that "the [Rule 54(d)] timeliness requirement is not jurisdictional, and the court may in its discretion consider the tardy [Rule 54(d)] motion pursuant to Rule 6(b), Fed.R.Civ.P." *See, e.g., American Key Corp. v. Cumberland Associates,* 102 F.R.D. 496, 497 (N.D.Ga.1984). Under either of the above approaches, I believe that the merits of Nalco's cost motion should be considered.

■ I also find that Nalco's cost motion was indeed timely filed. An interpretation of Rule 54(d) and Local Rule 9.03 whereby the five day period for filing an objection to the clerk's taxation of costs begins to run from the date the clerk actually taxes costs makes little sense since a party cannot be expected to file an objection to the taxation of costs before receiving notice of the clerk's decision. Therefore, I hold that the better approach to deal with the ambiguous language of both Rule 54(d) and Local Rule 9.03 is to find that the five day period for filing an objection to the clerk's taxation of costs begins to run from the date the party opposing the taxation of costs *receives notice* of the clerk's decision.

Although the clerk taxed costs on June 22, 1993, the clerk's office did not docket *and mail that decision to the parties* until June 30, 1993. That supports Nalco's assertion that it received notice of the clerk's decision on July 1, 1993. Using July 1, 1993, as the notice date, Nalco had until July 9, 1993, to file its cost motion. *See* Rule 6(a), Federal Rules of Civil Procedure, ("When the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation."). Nalco timely filed its cost motion on July 7, 1993.

Turning to the merits, I find that Nalco's cost motion should be denied. Local Rule 9.02(a) provides, in part, that "[t]he costs of a transcript of matters prior or subsequent to trial when necessary for appeal ... and necessarily obtained for use in the case are also taxable." Local Rule 9.02(b) states that:

> The court reporter's charge for the original of a deposition, if paid by the taxing party, and the taxing party's copy are taxable if the deposition was reasonably necessary for use in the case, whether or not it was used at trial.

Nalco argues that the $3,365.11 in deposition costs are not taxable because a final judgment has not yet been entered in this action. This is inaccurate with regard to the claims that are the subject of the defendants' challenged bill of costs. *See* Partial Judgment, dated April 8, 1993.

■ Nalco next contends that the defendants should not be awarded deposition costs because the depositions were not "reasonably necessary for use in the case." *See* Local Rule 9.02(b). Nalco argues that since the defendants contended before this court and the court of appeals that Nalco's covenant not to compete was unenforceable as a matter of law (the primary issue of the defendants' appeal from which this costs matter has arisen), "its depositions taken to flesh out the facts of the case were [not] necessary for use in this case." I find this argument to have no merit. *See Rollins Burdick Hunter*

*of Wisconsin, Inc. v. Hamilton,* 101 Wis.2d 460, 468, 304 N.W.2d 752 (1981) ("Whether the determination of the reasonableness of a noncompetition agreement is characterized as a question of law or one of fact, it still remains one which can be made only upon a consideration of factual matters."); *Geocaris v. Surgical Consultants, Ltd.,* 100 Wis.2d 387, 388, 302 N.W.2d 76 (Ct.App.1981) (acknowledging that while the determination of the reasonableness of a covenant not to compete in an employment agreement is a question of law, that determination must often "be resolved with reference to the facts of the particular case"). Consequently, Nalco's cost motion will be denied, without costs, and the clerk's taxation of $5,118.91 in costs in favor of the defendants will be upheld.

## ORDER

Therefore, **IT IS ORDERED** that Nalco's Rule 60(b) motion be and hereby is denied with costs and fees in the amount of $1000.00 to be awarded to the defendants in accordance with the instructions recited in this decision and order.

**IT IS ALSO ORDERED** that Nalco's request for sanctions be and hereby is denied, without costs.

**IT IS FURTHER ORDERED** that Nalco's motion for a protective order be and hereby is denied, with each party bearing its own costs and attorneys fees.

**IT IS FURTHER ORDERED** that Nalco be and hereby is directed to make Mr. Newlin available to the defendants for a deposition no later than August 16, 1993.

**IT IS FURTHER ORDERED** that Nalco's motion to compel be and hereby is granted in part and denied in part to the extent recited in this decision and order, with each party bearing its own costs and attorneys fees.

**IT IS FURTHER ORDERED** that the defendants be and hereby are directed to answer interrogatories Nos. 1–4 dated December 23, 1992, and respond to document requests 1–6 and 8 dated December 23, 1992, no later than August 16, 1993, in accordance with the instructions recited in this decision and order.

**IT IS FURTHER ORDERED** that Nalco's motion to amend be and hereby is granted, without costs, to the extent that Nalco may file a second amended complaint adding Mr. Griffin as a defendant but may not include its "Supplemental Remedy Against Hydro" in that complaint.

**IT IS FURTHER ORDERED** that Nalco be and hereby is directed to serve and file its second amended complaint no later than July 30, 1993.

**IT IS FURTHER ORDERED** that Nalco's cost motion be and hereby is denied, without costs, and the clerk of court's taxation of $5,118.91 in costs in favor of the defendants be and hereby is upheld.