**ELECTRONIC DATA SYSTEMS CORPORATION, Plaintiff,**

v.

**COMPUTER ASSOCIATES INTERNATIONAL, INC., Defendant.**

**No. CA 3–92–0055–T.**

United States District Court,
N.D. Texas,
Dallas Division.

March 16, 1992.

Phillip N. Smith of McKool Smith, Dallas, Tex., for plaintiff.

Thomas E. O'Connor of Arter Hadden Johnson & Bromberg, Dallas, Tex., for defendant.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS CERTAIN COUNTS

MALONEY, District Judge.

This matter is before the court on Defendant's January 29, 1992 motion to dismiss counts 2, 3, 7, 8, and 9 of Plaintiff's complaint and to dismiss certain claims asserted in counts 1, 5, and 6 of Plaintiff's complaint. Plaintiff responded to the motion on February 18, 1992. Defendant filed its reply on March 5, 1992. The court, having considered the motion, the response and the reply, is of the opinion that the motion should be denied.

## BACKGROUND

The parties to this action are both involved in the ever-growing field of computer technology. The dispute arises out of certain software licensing agreements entered into between Plaintiff Electronic Database Systems (EDS) and Defendant Computer Associates (CA). EDS has had software licensing agreements with CA, as well as other software companies. EDS alleges that CA has breached its licensing agreements with EDS. According to EDS, CA breached the licensing agreements in the following manner:

(1) by failing and refusing to provide software and maintenance to EDS required by the terms of the agreements;

(2) by requiring payment of (a) fees that are not provided for in the license agreements, and (b) fees in excess of the amounts provided for in the license agreements;

(3) by wrongfully maintaining that the use of numerous software products by EDS or its affiliates under the various license agreements is unauthorized and infringes upon CA's copyrights and proprietary rights;

(4) by wrongfully attempting to terminate license agreements when the provisions of the agreements do not permit such termination;

(5) by wrongfully applying fees paid by EDS for specific invoices or indebtedness to other, disputed, invoices or indebtedness;

(6) by wrongfully refusing to apply or recognize EDS's right to discounted fees; and

(7) by wrongfully refusing to permit upgrade or transfer of software unless EDS met improper conditions and demands.

Beyond allegations of breach of the license agreements, EDS alleges certain other misconduct by CA: EDS claims that CA intentionally and improperly interfered with EDS's relationships with existing and prospective customers; and, EDS claims that, during the process of trying to work out the problems concerning the license agreements, CA fraudulently induced EDS into making a 4.7 million dollar payment that was supposed to be subject to later adjustment.

Finally, EDS alleges that CA has acquired and willfully maintained monopoly power over the interstate trade or commerce in systems software for mainframe computers. EDS alleges that, in order to acquire and maintain its monopoly power, "CA has embarked upon a program of buying up competitors and potential competitors, giving it the vast preponderance of market share in [certain] product markets ... and leaving software users, including EDS, no commercially reasonable alternative to CA's software...." [1]

CA has moved, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss EDS's claims for fraud, misuse of copyright, monopolization, attempted monopolization, and illegal acquisition. CA has also moved to dismiss certain aspects of EDS's claims for breach of contract, interference with business relationships, and declaratory relief. EDS argues that it

---

1. CA has filed a counterclaim seeking approximately $5 billion in damages. As the motion before the court deals only with the allegations raised in EDS's complaint, the court will not discuss CA's counterclaim.

has sufficiently plead each claim asserted in its complaint.

### RULE 12(B)(6) STANDARD

Pursuant to Rule 12(b)(6), a complaint or parts of a complaint may be dismissed when it fails to state a claim upon which relief may be granted. A Rule 12(b)(6) motion tests the legal sufficiency of the claim or claims stated in the complaint. The court must decide whether the facts alleged, if true, would entitle EDS to the legal remedy requested. Unless the answer is unequivocally "no," the motion must be denied. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Many courts view Rule 12(b)(6) motions with "disfavor" because of the role pleadings play in federal practice and the liberal policy regarding amendment: "The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982) (quoting Wright & Miller, Federal Practice & Procedure: Civil § 1357 at 598 (1969)).

The Fifth Circuit has established two primary considerations in determining the propriety of a Rule 12(b)(6) motion. First, the court must accept as true all well pleaded facts in the complaint, and the complaint is to be liberally construed in favor of the plaintiff; however, the court will not accept as true conclusory allegations in the complaint. *Id.* Second, a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief. *Id.*

### DISCUSSION

#### 1. *Fraud*

EDS's fraud claim arises from an agreement between the parties pursuant to which EDS paid CA $4.7 million and delivered to CA a large amount of documentation concerning EDS's use of CA software. EDS alleges that, prior to the execution of the agreement, CA wrongfully refused to provide EDS with passwords to which EDS was entitled and which were necessary for use of CA software: this put EDS in danger of defaulting on customer contracts. EDS alleges that the purpose of the agreement was to permit EDS to receive the passwords, while the parties attempted in good faith to reconcile their differences. CA argues that EDS's fraud claim must be dismissed because it fails to allege a legally cognizable injury flowing from CA's alleged breach of the letter agreement.

Undoubtedly, a claim for fraud requires an allegation of injury. *C & C Partners v. Sun Exploration & Prod. Co.*, 783 S.W.2d 707, 718 (Tex.Civ.App.—Dallas 1989, writ denied). EDS argues that the injury it suffered was the payment of $4.7 million that it was not otherwise obligated to pay and provision of extensive documentation that it was not otherwise obligated to provide. EDS claims that, but for CA's fraudulent misrepresentations, it would not have paid the $4.7 million to CA, and it would not have provided CA the extensive documentation. EDS has sufficiently alleged injury. The fraud allegations will not be dismissed for failure to state a claim.

#### 2. *Misuse of Copyright*

EDS alleges that CA has misused its software copyrights in the following manner: restraining competition; imposing restrictions on the use of copyrighted software that extend beyond the permissible bounds of the exclusive rights granted by the copyright laws; and, tying the purchase of copyrighted software to other CA products or services. EDS seeks damages and a declaration that CA's misuse of its copyrights renders CA's copyrights invalid and unenforceable. CA argues that there is no cause of action for "misuse of copyright" and no legal basis for granting affirmative relief based on such a theory.

CA acknowledges that copyright misuse has been recognized as a defense to an allegation of copyright infringement. The parties have cited no Fifth Circuit case where copyright misuse was addressed either as a claim or as a defense. However, there is case law supporting the use of the copyright misuse doctrine as an affirmative defense to copyright infringement. *Broadcast Music v. Hearst/ABC Viacom Ent.*

*Services,* 746 F.Supp. 320, 328 (S.D.N.Y. 1990).

EDS is seeking a declaration that CA's copyrights are invalid and unenforceable. This claim must be viewed in the context of the dispute between the parties regarding EDS's alleged infringement of CA's copyrights. To the extent that EDS seeks a declaration that it has not infringed CA's copyrights because of CA's alleged misuse of such copyrights, the court will permit the claim to be asserted.

EDS also argues that the theory presented under the copyright misuse claim is independently actionable under antitrust principles. In ruling upon CA's motion, the court must look beyond the form and categories of the complaint: a Rule 12(b)(6) motion must be denied if the complaint alleges facts upon which relief may be granted. EDS alleges that CA illegally tied the licenses on certain copyrighted software products to a requirement that EDS take licenses of other software products. CA has failed to establish that EDS's copyright misuse claim, specifically the tying allegation, does not allege violations of § 2 of the Sherman Act. *See Mitchell Bros. Film Group v. Cinema Adult Theater,* 604 F.2d 852, 865 n. 27 (5th Cir.1979). Therefore, the court will deny CA's motion to dismiss EDS's copyright misuse claim.

### 3. Antitrust

In counts 7, 8, and 9 of its complaint, EDS alleges that CA has "monopolized," and "attempted to monopolize in violation of section 2 of the Sherman Act, 15 U.S.C. § 2," and that CA's "acquisition of Pansophic [Systems] violated section 7 of the Clayton Act, 15 U.S.C. § 18." CA argues that these three antitrust counts must be dismissed because (1) EDS has not properly alleged an antitrust market, and (2) EDS has not properly alleged antitrust injury to it or to competition in any relevant market.

Antitrust claims are often complex and fact-intensive. However, the Federal Rules of Civil Procedure do not impose heightened pleading requirements in antitrust claims. *St. Bernard Gen. Hosp., Inc. v. Hospital Serv. Ass'n,* 712 F.2d 978, 985 n. 13 (5th Cir.1983). In many antitrust cases the type of detailed information necessary to ultimately prove a claim is in the possession of the defendant. For this reason, "dismissals prior to giving the plaintiff an ample opportunity for discovery should be granted very sparingly." *Hospital Bldg. Co. v. Rex Hosp. Trustees,* 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976). Nevertheless, there are certain requirements for pleading violations of § 2 of the Sherman Act and § 7 of the Clayton Act.

### a. Sherman Act violations

■ Section 2 of the Sherman Act prohibits the actions of "[e]very person [to] monopolize, or attempt to monopolize any part of the trade or commerce...." 15 U.S.C. § 2. Monopoly power is "the power to control price or exclude competition." *United States v. E.I. du Pont de Nemours & Co.,* 351 U.S. 377, 391, 76 S.Ct. 994, 1005, 100 L.Ed. 1264 (1956). To prove a completed monopolization offense, a plaintiff must prove the defendant had both the capability and intent to monopolize. *Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.,* 732 F.2d 480, 487 (5th Cir.1984). As the Supreme Court stated in *United States v. Grinnell Corp.,* the "offense of monopoly under § 2 ... has two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of superior product, business acumen, or historic accident." 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1703–04, 16 L.Ed.2d 778 (1966).

These two elements necessarily require definition of a relevant market having both geographic and product dimensions. *Holiday Inns, Inc.,* 732 F.2d at 487. In the *du Pont* case, the Supreme Court articulated the test for defining the relevant market when it said "commodities reasonably interchangeable by consumers for the same purposes make up that 'part of the trade or commerce,' monopolization of which may be illegal." *du Pont,* 351 U.S. at 395, 76 S.Ct. at 1007. Product market definition generally presents a question of fact for

the jury. *Dimmitt Agri Indust., Inc. v. CPC Int'l, Inc.*, 679 F.2d 516, 525 (5th Cir.1982).

EDS makes the following allegations of the relevant antitrust market:

CA, the nations largest provider of mainframe systems software, has acquired and has willfully maintained monopoly power over the interstate and foreign trade or commerce for *systems software for mainframe computers in the world and in the United States.* More particularly, CA's monopoly power has extended to the following kinds of such software in those geographic markets: operating systems software, security software, tape management software, disk management software, job scheduling software, job accounting software, graphics software, applications development software, and database management software. (Emphasis added.)

CA argues that the foregoing allegations "force this court and CA to guess about the proper definition of the relevant market at issue." The court disagrees.

CA relies on *Besser Publishing Co. v. Pioneer Press, Inc.*, 571 F.Supp. 640 (N.D.Ill.1983) in support of its argument that EDS has failed to adequately define the relevant market. *Besser* involved antitrust claims by one publishing company against another. In granting the defendant's motion to dismiss, the district court rejected the plaintiff's definition of geographic market and product market as vague, unclear, and subject to various interpretations. *Id.* at 641–42.

The plaintiff in *Besser* defined the geographic market as including areas where defendant did not compete, and the geographic definition included such generalities as "less-than-metropolitan area-wide market." *Id.* at 641. The court justifiably dismissed the plaintiff's complaint without prejudice to replead. With respect to the product market, the plaintiff alleged that it was the "market or submarket for local and weekly print advertising." The court rejected this definition because the scope of "local" was unclear and required the defendant to "make assumptions regarding the meaning of definitions contained in plaintiff's complaint." *Id.* at 642.

There are no such problems with EDS's complaint. EDS defines the product market as systems software used on IBM and IBM-compatible mainframe computers. EDS also alleges a number of discrete submarkets of types of software that perform distinctly different functions. EDS has alleged a market definition sufficient to withstand CA's motion to dismiss. With regard to geographic definition, CA does not argue, beyond conclusory statements, that EDS's complaint is deficient in this respect. CA does not even address what EDS claims to be the relevant geographic market. Therefore, the court will deny CA's motion to dismiss for failure to sufficiently plead relevant markets. The court will also deny CA's motion to dismiss counts 7 and 8 for failure to sufficiently plead injury. The discussion below, regarding the sufficiency of the allegations of injury in count 9, is also applicable to the injury alleged in counts 7 and 8.

### b. *Clayton Act violations*

CA argues that, with respect to count 9, EDS has failed to sufficiently allege antitrust injury and antitrust standing under § 7 of the Clayton Act. The court, having reviewed EDS's pleadings with respect to count 9, is of the opinion that EDS has sufficiently alleged injury and standing under § 7 of the Clayton Act.

EDS alleges that the acquisition of Pansophic contributed to CA's monopolistic enterprises and that EDS was injured as a result of CA's conduct flowing from that monopoly. EDS alleges the following injury flowing from CA's acquisition of Pansophic, and other companies: CA knowingly and willfully disregarded its contractual obligations to EDS; CA imposed unreasonable, unauthorized restrictions on EDS's acquisition and use of CA's software; CA refused to maintain or upgrade licensed software and threatened to refuse to do so; CA required that EDS's customers purchase unneeded software; CA made demands for exorbitant "fees" whenever CA licensees contracted for EDS to perform

**1468**

data processing; and, CA repeatedly threatened to cancel licenses or deny passwords to its software users. The court has reviewed the cases cited by CA in support of its motion, and is of the opinion that none of the cited cases requires dismissal of count 9 for failure to sufficiently allege injury. Therefore, CA's motion to dismiss for failure to sufficiently allege standing and injury will be denied.

### 4. Breach of Contract, Tortious Interference, and Declaratory Relief

CA's last contention is that certain aspects of EDS's claims for breach of contract, tortious interference and declaratory relief must be dismissed because they are based in part on allegations concerning the terms of agreements between CA and its customers, who are not parties to this action. CA argues that EDS lacks standing to challenge the validity of CA's contracts with its (CA's) customers, and, even assuming EDS has standing, counts 1, 5, and 6 must be dismissed unless CA's customers are joined as indispensable parties.

The court has reviewed the contested allegations in EDS's complaint, and concludes that EDS is not attempting to challenge the validity of CA's contracts with its customers. The allegations do not allege injury arising from contracts other than those between EDS and CA. The allegations do not require interpretation issues of which will affect the legal rights CA customers other than EDS.

### CONCLUSION

For the foregoing reasons the court will deny CA's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

It is therefore ORDERED that Defendant's January 29, 1992 motion to dismiss counts 2, 3, 7, 8, and 9 of Plaintiff's complaint and to dismiss certain claims asserted in counts 1, 5, and 6 of Plaintiff's complaint is denied.