**ASSOCIATION OF AMERICAN MEDICAL COLLEGES,**
Plaintiff,

v.

**The PRINCETON REVIEW, INC., Defendant.**

No. CIV.A.03–00716(HHK).

United States District Court, District of Columbia.

June 22, 2004.

Robert A. Burgoyne, Fulbright & Jaworski LLP, Washington, DC, for Plaintiff.

Jay Ward Brown, Levine Sullivan Koch & Schulz, LLP, Washington, DC, Roger Lloyd Zissu, Fross Zelnick Lehrman & Zissu, PC, New York City, for Defendant.

## MEMORANDUM OPINION AND ORDER

KENNEDY, District Judge.

Charging The Princeton Review, Inc. ("Princeton Review") with copyright infringement, misappropriation of trade secrets and fraud, the Association of American Medical Colleges ("AAMC"), brings this action alleging that Princeton Review unlawfully compromised the confidentiality and security of AAMC's Medical College Admission Test ("MCAT"). This action is brought under the Copyright Act, 17 U.S.C. § 101 *et seq.* Princeton Review asserts two counterclaims, alleging that restrictions AAMC seeks to impose on (1) MCAT test takers and (2) purchasers of released MCAT questions are unenforceable because they constitute contracts of adhesion, violate the First Amendment and public policy, and because AAMC misused its copyright. Princeton Review also raises several affirmative defenses.

Before the court is AAMC's motion to dismiss Princeton Review's counterclaims and to strike five of Princeton Review's affirmative defenses [# 10]. Upon consideration of the motion, the opposition thereto, and the record of this case, the court concludes that the motion must be granted in part and denied in part.

## I. BACKGROUND INFORMATION

AAMC is a nonprofit education association comprised of medical schools, teaching hospitals, faculty, medical students and residents. AAMC develops, administers, and owns all rights in and to the MCAT, a standardized test taken by applicants to medical and other health professions schools in the United States. Medical school admissions committees use the standardized MCAT score to compare the qualifications of medical school applicants. These committees generally consider the score in combination with other information, such as undergraduate records, references, and personal interviews to make admissions decisions.

AAMC administers the MCAT in April and August each year at test centers throughout the United States. Designed to assess the mastery of certain skills and concepts for the practice of medicine, the

MCAT covers basic concepts in biology, chemistry, organic chemistry, and physics; facility with problem solving and critical thinking; and writing skills. The MCAT contains 221 questions in four sections: Verbal Reasoning, Physical Science, Biological Science, and a Writing Sample. With the exception of the Writing Sample, the sections consist of multiple choice questions. According to AAMC, it costs $250,000 to develop each MCAT test form.

AAMC registers its MCAT test forms and questions (including the answer choices) with the Register of Copyrights pursuant to the "secure test" regulations issued by the U.S. Copyright Office. 37 C.F.R. § 202.20. Under the Copyright Act, AAMC has certain exclusive rights with respect to the test forms and the test questions, including the exclusive right to copy, distribute, display, publish and prepare derivative works. 17 U.S.C. § 106.

AAMC endeavors to protect the secure nature of the MCAT test forms and questions by imposing certain restrictions ("MCAT Prohibitions"). Before administering the MCAT, exam proctors tell test takers that they are not allowed to "duplicate, record, or memorize any part of the MCAT." Compl. ¶ 20. AAMC also requires test takers to write out in longhand and certify by signature on their answer form that they "agree to the conditions set forth in the MCAT Announcement." *Id.* ¶ 21. The MCAT Announcement is a booklet that contains the policies and procedures for taking the MCAT. It contains the following language under the heading "Test Center Regulations and Procedures":

> The MCAT is confidential and contains copyrighted material. All test materials, including test books and answer documents, are the property of the MCAT Program Office and AAMC and must be returned to the test supervisor after each administration. No portion of such materials may be retained by examinees. Pages or covers of test books are not to be torn out of or separated from the test books in any way. Additionally, **test takers are not permitted to duplicate or record (by copying, photographing, memorizing, or any other means) any part of the MCAT.**

Ex. A to Pl.'s Reply at 10 (emphasis in original). At the time of testing, test takers are required to sign a statement agreeing not to "disclose-in whole or in part-any exam questions or answers to anyone during or after the exam." *Id.* at 5. The "Who May Register" section of the MCAT Announcement sets forth AAMC's policy that only individuals who are preparing to apply to a health professions school should take the MCAT, absent special permission from AAMC. *Id.* An individual who wants to take the MCAT for reasons other than applying to a health profession school must send a written request to AAMC stating her reason(s) for wanting to take the test. AAMC reviews these requests on a case-by-case basis.

AAMC also sells MCAT practice materials to the public, including copies of previous actual test questions that have been "retired" and are no longer used ("MCAT Released Questions"). Compl. ¶ 50.

Princeton Review is a private corporation that provides test preparation courses and tutoring for post-secondary and graduate admissions tests, including the MCAT. AAMC alleges that Princeton Review arranged to have its employees and/or agents take the MCAT, specifically the April and August 2002 examinations, in order to memorize test questions rather than for the purpose of preparing to enroll in a health professions school. AAMC also alleges that Princeton Review assembled, copied and distributed "tap reports" to its instructors for use in Princeton Review's

MCAT preparation classes. Compl. ¶ 33. A "tap report" is a detailed report that allegedly reconstructs the content of the MCAT's questions and answers by compiling the reports of those who memorized sections of the MCAT.

In defense of this action, Princeton Review asserts two counterclaims and nineteen affirmative defenses. In its first counterclaim, Princeton Review claims that the MCAT Prohibitions are unenforceable as to MCAT test takers because they are contracts of adhesion, constitute misuse of copyright, violate public policy and are contrary to the First Amendment. In its second counterclaim, Princeton Review claims that the MCAT Prohibitions are unenforceable as to purchasers of MCAT Released Questions for the same reasons.

## II. ANALYSIS

AAMC moves to dismiss defendant's counterclaims for failure to state a claim under FED. R. CIV. P. 12(b)(6). AAMC also moves to strike Princeton Review's fifth, seventh, eighth, twelfth, and fourteenth affirmative defenses pursuant to FED. R. CIV. P. 12(f). The affirmative defenses at issue are: (1) that Princeton Review's conduct is protected by the First Amendment and principles underlying truth in testing laws; (2) that Section 301(a) of the Copyright Act, 17 U.S.C. § 301(a) preempts AAMC's misappropriation of trade secrets claim; (3) that AAMC's misappropriation of trade secrets claim is barred because it has misused its copyrights; (4) that AAMC's fraud claim is barred because the MCAT Prohibitions are unenforceable contracts of adhesion; and (5) that AAMC's fraud claim is barred by the statute of frauds.

### A. Standard for Motion to Dismiss

A motion to dismiss is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Martin v. Ezeagu,* 816 F.Supp. 20, 23 (D.D.C.1993) (internal quotations omitted); *see Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (stating that a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). The court must presume all well-pleaded factual allegations in the complaint to be true and draw all reasonable inferences from those allegations in favor of the non-moving party in applying Rule 12(b)(6). *See Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994); *Schuler v. United States,* 617 F.2d 605, 608 (D.C.Cir. 1979) (stating that the court must give the plaintiff "the benefit of all inferences that can be derived from the facts alleged"). In evaluating a Rule 12(b)(6) motion to dismiss, the court is limited to considering facts alleged in the complaint, any documents either attached to or incorporated in the complaint, matters of which the court may take judicial notice, *EEOC v. St. Francis Xavier Parochial School,* 117 F.3d 621, 624 (D.C.Cir.1997), and matters of public record, *Marshall County Health Care Authority v. Shalala,* 988 F.2d 1221, 1226 n. 6 (D.C.Cir.1993). Factual allegations in briefs or memoranda of law may not be considered when deciding a Rule 12(b)(6) motion, particularly when the facts they contain contradict those alleged in the complaint. *Henthorn v. Dep't of Navy,* 29 F.3d 682, 688 (D.C.Cir.1994). In this case, because AAMC seeks to dismiss Princeton Review's counterclaims, the court will treat Princeton Review's Answer and the factual allegations therein the same way it would treat a plaintiff's complaint in the usual motion to dismiss scenario.

### B. Counterclaims

AAMC argues that Princeton Review's counterclaims should be dismissed because

they fail to state a claim upon which relief can be granted.[1] Both counterclaims will be addressed together because the legal issues presented by AAMC's motion overlap.

### 1. Unenforceable Contracts of Adhesion

■ Princeton Review alleges that any agreement to the MCAT Prohibitions by test takers, or purchasers of MCAT Released Questions, is not voluntarily given, is unconscionable, and therefore is an unenforceable contract of adhesion.

■ A contract of adhesion is defined generally as one "imposed upon a powerless party, usually a consumer, who has no real choice but to accede to its terms." *Chinnery v. Frank E. Basil, Inc. of Del.,* 1988 WL 4803, at *1 n. 2 (D.D.C. Jan. 13, 1988). Even if a contract is one of adhesion, it is enforceable unless it is deemed unconscionable upon judicial scrutiny. *See Smith, Bucklin & Assocs., Inc. v. Sonntag,* 83 F.3d 476, 480 (D.C.Cir.1996). The party seeking to establish unconscionability must prove "not only that one of the parties lacked a meaningful choice but also that the terms of the contract are unreasonably favorable to the other party." *Id.* (quoting *Riggs Nat'l Bank of Wash., D.C. v. Dist. of Columbia,* 581 A.2d 1229, 1251 (D.C.1990)). A contract is "not unconscionable merely because the parties to it are unequal in bargaining position . . . ." RESTATEMENT (SECOND) OF CONTRACTS § 208 cmt. d. (1981); *see also Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 33, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) ("Mere inequality in bargaining power,

however, is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context.").

■ AAMC argues that even if the MCAT Prohibitions are contracts of adhesion, they are not unconscionable. AAMC acknowledges that MCAT test takers may not have a choice as to whether or not they will agree to the MCAT Prohibitions if they desire to sit for the exam. AAMC contends, however, that the MCAT Prohibitions do not unreasonably favor AAMC because they merely ask test takers to take the test for legitimate reasons and to respect the confidentiality of the secure test questions.

The court finds that Princeton Review adequately states a claim that the MCAT Prohibitions are unenforceable and unconscionable contracts of adhesion. Princeton Review alleges that AAMC coerces test takers into agreeing to the MCAT Prohibitions. Answer ¶ 117(a). On a motion to dismiss, the court must make all inferences in favor of the nonmoving party and assume that the MCAT Prohibitions are contracts of adhesion. Although the next step in the unconscionability analysis requires Princeton Review to establish that "one of the parties lacked a meaningful choice but also that the terms of the contract are unreasonably favorable to the other party," *Smith, Bucklin & Assocs., Inc.,* 83 F.3d at 480 (citation omitted), Princeton Review is not required to prove its claim in the complaint. The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which she bases her claim. *See Conley,* 355 U.S. at

---

1. Relying on *North Central F.S., Inc. v. Brown,* 951 F.Supp. 1383, 1412 n. 22 (N.D.Iowa 1996), and *EEOC v. Mike Fink Corp.,* 1998 WL 34078445, at *6 (M.D.Tenn. July 17, 1998), Princeton Review argues that because its counterclaims seek a declaration of rights that are the "mirror image" of the relief

AAMC seeks, there is no basis for dismissal of its counterclaims on the face of the pleading. Def.'s Opp'n at 11. Princeton Review's argument is without merit and its reliance on *North Central,* 951 F.Supp. at 1412 n. 22, and *Mike Fink Corp.,* 1998 WL 34078445, at *6, is misplaced.

47, 78 S.Ct. 99 (stating that a claim need not be detailed but simply provide fair notice of the claim and the grounds on which it rests). AAMC's arguments regarding contracts of adhesion go to the merits of the claim, not whether Princeton Review failed to state a claim. Because Princeton Review adequately pled the basis for this counterclaim, the court denies AAMC's motion to dismiss for failure to state a claim on this ground.

## 2. Copyright Misuse

■ Princeton Review also brings its counterclaims on the basis of copyright misuse. AAMC moves to dismiss the counterclaims on the grounds that copyright misuse cannot be the basis of an affirmative claim.

The doctrine of copyright misuse, which has its historical roots in the unclean hands defense,[2] "bars a culpable plaintiff from prevailing on an action for an infringement of the misused copyright." *Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 972 (4th Cir.1990); *see Practice Mgmt. Info. Corp. v. Am. Med. Ass'n*, 121 F.3d 516, 520 n. 9 (9th Cir.1997) (adopting the rule that copyright misuse is a defense to copyright infringement); *DSC Communications Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 601 (5th Cir.1996) (same); *Nat'l Cable Television Ass'n, Inc. v. Broad. Music, Inc.*, 772 F.Supp. 614, 651 (D.D.C.1991) (stating that "copyright misuse is an affir-

mative, equitable defense to infringement that has grown out of the recognized doctrine of patent misuse"). The doctrine forbids the use of the copyright to secure an exclusive right or limited monopoly not granted by the Copyright Office and which is contrary to public policy to grant. *See Lasercomb*, 911 F.2d at 977. The *Lasercomb* court found the copyright misuse defense analogous to the patent misuse defense, which the Supreme Court originally recognized in *Morton Salt Co. v. G.S. Suppiger Co.*, 314 U.S. 488, 492–93, 62 S.Ct. 402, 86 L.Ed. 363 (1942).[3] *Lasercomb*, 911 F.2d at 977. As the first court to extend the rationale beyond patent misuse to copyrights, the Fourth Circuit explained in *Lasercomb* that whereas "copyright law seek[s] to increase the store of human knowledge and arts by rewarding ... authors with the exclusive rights to their works for a limited time .... [T]he granted monopoly power does not extend to property not covered by the ... copyright." 911 F.2d at 976. Other courts have since affirmed that misuse often exists where the patent or copyright holder has engaged in some form of anti-competitive behavior. *See Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 342 F.3d 191, 204 (3d Cir.2003) (explaining the history and public policy behind the copyright misuse defense); *Nat'l Cable Television*, 772 F.Supp. at 652 (stating that patent misuse occurs when a patent holder "uses

---

2. The unclean hands defense closes the doors of a court of equity to a party tainted with inequitableness or bad faith relative to the matter in which she seeks relief and derives from the equitable maxim that one " 'who comes into equity must come with clean hands.' " *United States v. Philip Morris Inc.*, 300 F.Supp.2d 61, 74 (D.D.C.2004) (quoting *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945)).

3. In this landmark patent infringement action, the Supreme Court held that a patent operates to create and grant to the patentee an exclusive right to make, use and vend the particular device described in and claimed in the patent, but does not grant immunity for a monopoly not within the grant. *Morton Salt*, 314 U.S. at 491, 62 S.Ct. 402. Thus, the court stated that use of a patent to suppress the sale of an unpatented article may preclude the patentee from prevailing on an infringement claim because equity requires that a party have "clean hands." *Id.* at 491–92.

its right to violate the antitrust laws or otherwise abuses the monopoly power granted it by the patent").

▮ Princeton Review expressly disavows that it is asserting misuse of copyright as a defense to copyright infringement. *See* Def.'s Opp'n at 13. Instead, Princeton Review argues that it can bring an affirmative claim of copyright misuse, relying on *Electronic Data Systems Corp. v. Computer Associates International, Inc.*, 802 F.Supp. 1463 (N.D.Tex.1992), in which the court permitted the assertion of copyright misuse both as a defense to copyright infringement, and as an independently actionable claim. *Id.* at 1466.

*Electronic Data* provides scant support for Princeton Review's position because it is distinguishable from the instant case on in several respects. First, Princeton Review is not asserting misuse of copyright as a defense to copyright infringement, but is disputing the enforceability of the MCAT Prohibitions under D.C. law. Second, it appears that the court in *Electronic Data* permitted an independent copyright misuse claim to proceed because the copyright misuse claim alleged violations of § 2

of the Sherman Act. *Elec. Data*, 802 F.Supp. at 1466 (stating that the court would deny the motion to dismiss the plaintiff's copyright misuse claim because the defendant had "failed to establish that [the plaintiff's] copyright misuse claim ... does not allege violations of § 2 of the Sherman Act"). Princeton Review, however, does not allege any Sherman Act or other antitrust violations.[4],[5]

Courts have generally recognized misuse of copyright as a defense to copyright infringement and not as an affirmative claim. *See Schoolhouse, Inc. v. Anderson*, 2001 WL 1640081, at *7 (D.Minn. Nov. 8, 2001) (stating that "abuse of copyright is generally recognized as an equitable defense to a copyright infringement claim and is rarely recognized as an independently justiciable cause of action"); *Sony Pictures Entm't, Inc. v. Fireworks Entm't Group, Inc.*, 156 F.Supp.2d 1148, 1167 n. 28 (C.D.Cal.2001) (noting that to the extent the defendants asserted misuse of copyright, the defendants had to bring such a claim as an affirmative defense, not as a counterclaim), *vacated pursuant to*

---

**4.** The court acknowledges that Princeton Review asserts in its opposition that "AAMC seeks to leverage its membership monopoly as well as its monopoly over the [MCAT] to extend its rights beyond those granted to it pursuant to Section 106 of the Copyright Act" and "abuses the monopoly power granted by the copyrights." Def.'s Opp'n at 13, 16. However, neither of Princeton Review's counterclaims asserts a violation of antitrust law. "Ordinarily, absent a formal motion to ... amend the complaint, a court does not treat the contents of an opposition to a motion to dismiss as an amendment to a complaint." *Rohrbaugh v. Inv. Co. Inst.*, 2002 WL 31100821, at *5 n. 10 (D.D.C. July 2, 2002) (citing *Confederate Mem'l Ass'n v. Hines*, 995 F.2d 295, 299 (D.C.Cir.1993); *Ali v. Dist. of Columbia*, 278 F.3d 1, 8 (D.C.Cir.2002)).

**5.** Princeton Review refers the court to *Assessment Technologies of WI, LLC, v. WIREdata,*

*Inc.*, 350 F.3d 640 (7th Cir.2003), in arguing that a copyright misuse counterclaim is not limited to antitrust violations. *Id.* at 647 (stating that the argument for applying misuse of copyright beyond the bounds of antitrust is that an "abuse of process" has occurred). *Assessment Technologies*, however, is not analogous to the present case. First, *Assessment Technologies* is a case "about the attempt of a copyright owner to use copyright law to block access to data that not only are neither copyrightable nor copyrighted, but were not created or obtained by the copyright owner." *Id.* at 641. The instant lawsuit involves AAMC's MCAT test forms and questions, which *are* copyrighted materials. Second, *Assessment Technologies* addresses copyright misuse as a defense to infringement and does not discuss whether the doctrine could be recognized as an independent claim or counterclaim. *See id.* at 647.

*settlement,* 2002 WL 32387901 (C.D. Cal. Nov. 5, 2002); *Warner/Chappel Music, Inc. v. Pilz Compact Disc, Inc.,* 1999 WL 999332, at *6 n. 5 (E.D.Pa. Oct. 26, 1999) (refusing to allow an affirmative claim of copyright abuse to proceed because there was "no authority in [the Third] Circuit for such a claim, and virtually no authority in any Circuit for such a claim either"). These cases, however, do not discuss the rationale for limiting the doctrine of copyright misuse for use as a defense to infringement. Thus, the court will look to cases involving other types of intellectual property in which courts have confined the doctrine of misuse to a defense.

In *Transitron Electronic Corp. v. Hughes Aircraft Co.,* 487 F.Supp. 885 (D.Mass.1980), the court held that patent misuse was not an actionable tort because it was developed as "an equitable defense, analogous to the clean hands defense, against an infringement action." *Id.* at 893. "That the doctrine does not create an independent cause of action for the alleged infringer is implicit in the black letter statement of the effect of finding patent misuse: 'Misuse of a patent merely suspends the owner's right to recover for infringement of a patent.'" *Id.* (quoting CHISUM, PATENTS 19–91 (1978)). In the context of trademarks, at least one court has rejected trademark misuse as an affirmative defense. *Juno Online Servs. v. Juno Lighting, Inc.,* 979 F.Supp. 684, 690 (N.D.Ill.1997). In *Juno,* the court noted that an "affirmative claim for patent misuse has a suspect history to begin with" and further stated:

> The fear expressed in cases such as *Morton Salt* is that the holder of a government monopoly will use the monopoly to the detriment of the public by destroying competition. By contrast, in trademark law, the mark holder usually does not have the ability to destroy competition. The holder can only keep competitors from using the mark, and, in most circumstances, cannot keep them from selling a directly competing product. Therefore, there appears to be less of a justification for extending a trademark misuse doctrine than there is in the patent area.

*Id.* Because the policy reasons underlying the development of the equitable doctrine of copyright misuse are grounded in the unclean hands doctrine, permitting copyright misuse as an independent, affirmative claim would be contrary to the purpose of the doctrine. This court has previously indicated that copyright misuse should be used only in narrow circumstances. "Unclean hands is recognized 'only rarely' in copyright cases, where the copyright holder's 'transgression is of serious proportions and relates directly to the subject matter of the infringement action.'" *Nat'l Cable Television,* 772 F.Supp. at 652 (quoting *Broad. Music, Inc. v. Hearst/ABC Viacom Entm't,* 746 F.Supp. 320, 329 (S.D.N.Y. 1990)) (internal citation omitted).

Furthermore, although an antitrust violation is not a "prerequisite to showing misuse," "failure to show [a] violation of the antitrust laws makes it more difficult" for the court to find copyright misuse. *Nat'l Cable Television,* 772 F.Supp. at 652. The absence of an antitrust violation requires plaintiffs to show that there has been an illegal extension of monopoly or other violation of the public policy underlying copyright law. *Id.* Princeton Review's counterclaims do not allege an antitrust violation or an illegal extension of monopoly. Indeed, Princeton Review is not a direct competitor of AAMC, but profits from AAMC's development and administration of the MCAT. Although Princeton Review contends that the MCAT Prohibitions are against public policy because they are contrary to the goals of truth in

testing laws and the principles of the First Amendment, these public policies are not the public policies underlying copyright law. The purpose of copyright law as set out in the Constitution's Copyright Clause is to "promote the Progress of ... useful Arts, by securing for limited Times to Authors ... the exclusive Right to their respective Writings ...." U.S. CONST. art. I, § 8, cl. 8; *see also Sony Corp. of Am. v. Universal Studios, Inc.*, 464 U.S. 417, 432, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984) ("The immediate effect of our copyright law is to secure a fair return for an 'author's' creative labor. But the ultimate aim is, by this incentive, to stimulate artistic creativity for the general public good."). In *Stewart v. Abend*, 495 U.S. 207, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990), the Supreme Court stated:

> [A]lthough dissemination of creative works is a goal of the Copyright Act, the Act creates a balance between the artist's right to control the work during the term of the copyright protection and the public's need for access to creative works. The copyright term is limited so that the public will not be permanently deprived of the fruits of an artist's labors.

*Id.* at 228, 110 S.Ct. 1750. The Court further stated that "nothing in the copyright statutes would prevent an author from hoarding all of his works during the term of the copyright. In fact, this Court has held that a copyright owner has the capacity arbitrarily to refuse to license one who seeks to exploit the work." *Id.* at

228–29, 110 S.Ct. 1750. In light of these pronouncements by the Supreme Court, Princeton Review's argument that the MCAT Prohibitions contravene the Copyright Act is without merit. Accordingly, the court concludes that copyright misuse does not form the basis of an affirmative claim and dismisses Princeton Review's counterclaims for failure to state a claim on this ground.

### 3. First Amendment and Public Policy

Princeton Review further claims that the MCAT Prohibitions are unenforceable because they contravene the First Amendment and public policy behind truth in testing laws. AAMC argues that its efforts to protect its tests by imposing the MCAT Prohibitions do not violate the First Amendment or public policy. The court agrees with AAMC.

### a. First Amendment

█ The First Amendment does not require that copyrighted works be published or made available to particular persons. *Stewart*, 495 U.S. at 228–29, 110 S.Ct. 1750. The Copyright Act gives a copyright holder the exclusive right to determine whether to reproduce or distribute her work. 17 U.S.C. § 106.[6] Thus, AAMC's imposition of the MCAT Prohibitions does not contravene the Copyright Act. The Supreme Court has stated that "copyright law contains built-in First Amendment accommodations" because copyright law distinguishes between ideas

---

**6.** Moreover, under federal regulations, the very definition of a secure a secure test, such as the MCAT, requires restricted access to the test. 37 C.F.R. § 202.20(b)(4) provides:

> A secure test is a nonmarketed test administered under supervision at specified centers on specific dates, all copies of which are accounted for and either destroyed or returned to restricted locked storage follow-

ing each administration. For these purposes a test is not marketed if copies are not sold but it is distributed and used in such a manner that ownership and control of copies remain with the test sponsor or publisher.

*Id.* The Library of Congress does not retain a copy of secure tests. 37 C.F.R. § 202.20(c)(2)(vi).

and expression, and protects only expression. *Eldred v. Ashcroft*, 537 U.S. 186, 219, 123 S.Ct. 769, 154 L.Ed.2d 683 (2003); *see Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 556, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985) (stating that "copyright's idea/expression dichotomy strike[s] a definitional balance between the First Amendment and the Copyright Act by permitting free communication of facts while still protecting an author's expression") (internal quotation marks and citation omitted). In addition, the *Eldred* Court stated that the "fair use" defense in copyright law, which permits the public to use expression itself in certain circumstances, further accommodates the First Amendment. *Eldred*, 537 U.S. at 219, 123 S.Ct. 769; *see* 17 U.S.C. § 107 ("[T]he fair use of a copyrighted work, including such use by reproduction in copies ..., for purposes such as criticism, comment, news reporting, teaching ..., scholarship, or research, is not an infringement of copyright."). Therefore, the court does not find that the MCAT Prohibitions violate the First Amendment and will grant AAMC's motion to dismiss Princeton Review's counterclaims on this ground.

#### b. Public Policy

■ Princeton Review relies on truth in testing laws from New York, California, and Arizona to argue that the MCAT Prohibitions are unenforceable because they violate public policy. *See* N.Y. EDUC. LAW § 340 *et seq.*; CAL. EDUC. CODE § 99150 *et seq.*; ARIZ. REV. STAT. § 15–747. While these laws seek to promote fairness and accuracy in the use of standardized testing, *see, e.g.*, CAL. EDUC. CODE § 99150, the court does not find that these public policies render the MCAT Prohibitions unenforceable. In arguing that public policy may serve as grounds for a First Amendment claim, Princeton Review misapplies *Warner/Chappel Music*, which holds that a copyright misuse defense may be raised if there is a violation of "the public policy embodied *in the grant of a copyright.*" 1999 WL 999332, at *5 (emphasis added). Public policies underlying truth in testing laws are not those embodied in the grant of a copyright, and thus cannot be used to invalidate AAMC's imposition of the MCAT Prohibitions. Furthermore, state truth in testing laws do not-and cannot-infringe on rights afforded to copyright holders under federal law.[7] To the extent state law and federally-created rights directly conflicted, state law would be preempted. *See Camps Newfound/Owatonna, Inc. v. Town of Harrison*, 520 U.S. 564, 616, 117 S.Ct. 1590, 137 L.Ed.2d 852 (1997); *Waterview Mgmt. Co. v. FDIC*, 105 F.3d 696, 698 (D.C.Cir.1997). The Copyright Act has given AAMC broad rights regarding distribution of its secure tests; therefore the court does not find that the MCAT Prohibitions are unenforceable as contrary to public policies underlying state truth in testing laws. Accordingly, the court will grant AAMC's motion to dismiss Princeton Review's counterclaims on this ground.

#### C. Standard for Motion to Strike

FED. R. CIV. P. 12(f) provides that the court may, upon motion of a party or *sua*

---

**7.** Among the specific state statutes Princeton Review cites, California's truth in testing laws expressly state that "[n]othing in this section shall be construed to diminish or authorize the infringement of any rights protected by law relating to copyright." CAL. EDUC. CODE § 99162. Arizona's truth in testing law exempts from its scope any nationally standardized test that is copyrighted and would be deprived of value if the questions or answers become known to pupils before the test. ARIZ. REV. STAT. § 15–747(A). Arizona law also prohibits "any other activities that would violate the copyright protection afforded by federal law to the copyright holders of the tests." ARIZ. REV. STAT. § 15–747(B).

*sponte,* strike "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" from any pleading.[8] *See* FED. R. CIV. P. 12(f). Courts disfavor motions to strike. *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distribs. Pty. Ltd.,* 647 F.2d 200, 201 n. 1 (D.C.Cir. 1981) (citing 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1380, at 783 (1969)). However, such motions "should be granted where it is clear that the affirmative defense is irrelevant and frivolous and its removal from the case would avoid wasting unnecessary time and money litigating the invalid defense." *SEC v. Gulf & W. Indus., Inc.,* 502 F.Supp. 343, 345 (D.D.C.1980). A court has liberal discretion to strike such filings as it deems appropriate under Rule 12(f). *Pigford v. Veneman,* 215 F.R.D. 2, 4 (D.D.C.2003) (quoting *Stanbury Law Firm v. IRS,* 221 F.3d 1059, 1063 (8th Cir.2000)).

### D. Affirmative Defenses

#### 1. Fifth Affirmative Defense: First Amendment

 AAMC moves to strike Princeton Review's fifth affirmative defense, which asserts that the First Amendment protects Princeton Review's conduct. For the reasons stated above in Section II.B.3.a, Princeton Review cannot assert First Amendment protection for accessing and communicating information about AAMC's copyrighted and secure tests. *See also Dallas Cowboys Cheerleaders, Inc. v. Scoreboard Posters, Inc.,* 600 F.2d 1184, 1187–88 (5th Cir.1979) (stating that "[t]he first amendment is not a license to trammel on legally recognized rights in intellectual property"); *Chicago Sch. Reform Bd. of Trustees v. Substance, Inc.,* 79 F.Supp.2d 919, 929 (N.D.Ill.2000) (finding

no set of circumstances that would afford the defendants First Amendment protection to publish copyrighted tests). Therefore, the court will strike Princeton Review's fifth affirmative defense.

#### 2. Seventh Affirmative Defense: Preemption by Copyright Act

 AAMC moves to strike Princeton Review's seventh affirmative defense, which asserts that section 301(a) of the Copyright Act, 17 U.S.C. § 301(a), preempts AAMC's cause of action for misappropriation of trade secrets. Section 301(a) provides that "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 ... are governed exclusively by this title." *Id.* Preemption under the Copyright Act has both subject matter and equivalency requirements; to be preempted, state law must not only relate to the type of work protected by copyright law, but it must be equivalent to any of the exclusive rights protected by the Copyright Act. 17 U.S.C. § 301(b)(1), (3). The D.C. Circuit has held that:

> If an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display in order to constitute a state created cause of action, there is no preemption, provided that the extra element changes the nature of the action so that it is qualitatively different from a copyright infringement claim.

*Sturdza v. United Arab Emirates,* 281 F.3d 1287, 1304 (D.C.Cir.2002) (citing *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 456 (6th Cir.2001)).

 The court must examine and compare the elements of a copyright infringe-

---

8. A "pleading" includes a complaint, answer, reply to a counterclaim, answer to a cross-claim third-party complaint, or third-party answer. FED. R. CIV. P. 7(a).

ment claim and a trade secret misappropriation claim to determine whether the misappropriation claim contains an extra element. The elements of a copyright infringement claim are: (1) ownership of a valid copyright by the plaintiff and (2) copying of the original elements of the copyrighted work by the defendant. *Feist Pubs., Inc. v. Rural Tel. Service Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). Under D.C. law, misappropriation of a trade secret [9] is:

(A) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(B) Disclosure or use of a trade secret of another without express or implied consent by a person who:

(i) Used improper means to acquire knowledge of the trade secret; or

(ii) At the time of disclosure or use, knew or had reason to know that the trade secret was:

(I) Derived from or through a person who had utilized improper means to acquire it;

(II) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use;

(III) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(iii) Before a material change in his or her position, knew or had reason to know that the information was a trade secret and knowledge of the trade se-

cret had been acquired by accident or mistake.

D.C.Code § 36-401. A trade secret misappropriation claim, unlike a copyright infringement claim, requires a showing of improper acquisition of secret material or a breach of confidentiality. *See id.; Park v. Arnott*, 1992 WL 184521, at \*3 (D.D.C. July 14, 1992); *Westech Gear Corp. v. Dep't of Navy*, 1988 WL 170558, at \*2 (D.D.C. May 9, 1988). In *Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655 (4th Cir.1993), the Fourth Circuit compared the elements of a trade secret misappropriation claim and copyright infringement claim and held that because the misappropriation claim required a breach of trust or confidence, § 301 of the Copyright Act did not preempt the claim. *Id.* at 660. Similarly, other courts have held that trade secret misappropriation claims based on breaches of confidential relationships are not preempted because the breach of confidentiality is an extra element. *See Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 218 (3d Cir.2002) (stating that a trade secrets misappropriation claim based on a breach of confidentiality contains an extra element that avoids preemption); *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1165 (1st Cir.1994) (stating that "[a] trade secrets claim that requires proof of a breach of a duty of confidentiality ... [is] not preempted because participation in the breach of a duty of confidentiality-an element that forms no part of a copyright infringement claim-represents unfair competitive conduct qualitatively different from mere unauthorized copying"); *Com-*

---

9. A trade secret is information that "(A) Derives actual or potential independent economic value, from not being generally known to, and not being readily ascertainable by, proper means by another who can obtain economic value from its disclosure or use; and (B) Is the subject of reasonable efforts to maintain

its secrecy." D.C.Code § 36-401(4); *see also* RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 39 (1995) ("A trade secret is any information that can be used in the operation of a business or other enterprise and that is sufficiently valuable and secret to afford an actual or potential economic advantage over others.").

*puter Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 717 (2d Cir.1992) (holding that unfair competition claims based on breaches of confidentiality or trade secrets satisfy the extra element test and are not preempted); *Warrington Assocs., Inc. v. Real–Time Eng'g Sys., Inc.*, 522 F.Supp. 367, 369 (N.D.Ill.1981) (holding that the Copyright Act did not preempt common law trade secret misappropriation claims based on a breach of trust or confidentiality). However, misappropriation claims based solely on the copying of copyrighted work are preempted. *See Computer Assocs.*, 982 F.2d at 717; *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 788–89 (5th Cir.1999).

In the instant action, AAMC alleges that Princeton Review acquired and disclosed its trade secrets, i.e., the contents of the secure MCAT test forms, through improper means. AAMC claims that Princeton Review's employees and agents falsely certified that they would not duplicate or record any portion of the MCAT. The court finds that the MCAT Prohibitions that AAMC imposed, if they are not found to be contracts of adhesion, would impose a duty on Princeton Review to maintain the confidentiality of the MCAT questions, and breach of the MCAT Prohibitions would be an improper acquisition. Thus, this extra element would preclude the trade secrets misappropriation claim from preemption by the Copyright Act.

Princeton Review characterizes the "extra element" in AAMC's trade secrets misappropriation claim as secrecy, and contends that because the MCAT questions are not kept secret, the misappropriation claim merely duplicates the copyright infringement claim. Princeton Review claims that the MCAT test forms are not

"secure" trade secrets because AAMC has widely disseminated and disclosed its MCAT questions to test takers and students. The question of whether registration of the MCAT test forms under the secure test regulations is sufficient to establish the secrecy required in a trade secrets misappropriation claim goes to the merits of AAMC's claim, and does not address whether the Copyright Act would preempt the misappropriation claim.[10] Accordingly, the court will strike Princeton Review's seventh affirmative defense.

### 3. Eighth Affirmative Defense: Copyright Misuse

■ AAMC seeks to strike Princeton Review's eighth affirmative defense, which asserts that AAMC's misappropriation of trade secrets claim is barred by AAMC's copyright misuse in violation of public policy. AAMC argues that Princeton Review has not pled facts that show copyright misuse and that there is no authority for the proposition that copyright misuse is a cognizable defense to a misappropriation of trade secrets claim.

Princeton Review responds that it has sufficiently pled facts to show copyright misuse by AAMC. Princeton Review maintains that AAMC's secure test materials were not in fact trade secrets, and thus AAMC's attempts to prevent the disclosure of the MCAT questions violate public policy underlying truth in testing laws. As discussed above in Section II.B.3.b, public policies underlying truth in testing laws do not make the MCAT Prohibitions unenforceable. Princeton Review also reiterates its argument that AAMC has attempted to extend its monopoly beyond rights afforded under the Copyright Act. As discussed above in Section II.B.2,

---

**10.** Princeton Review also raises its argument regarding truth in testing laws in connection with this affirmative defense. Because the court found this argument to be without merit in Section II.B.3.b, the court will not consider the argument here.

AAMC's actions do not contravene the Copyright Act. Princeton Review has pled no other facts to show copyright misuse by AAMC. As a result, the court concludes that Princeton Review has failed to plead facts sufficient to support this affirmative defense.

Furthermore, while courts have recognized copyright misuse as an equitable defense to copyright infringement claims, *see, e.g., Lasercomb,* 911 F.2d at 977, the court could find no legal authority that has applied copyright misuse or an unclean hands defense to a trade secrets misappropriation claim. Courts that have considered the issue have found that an unclean hands defense does not bar a trade secrets misappropriation claim. *See Alcatel USA,* 166 F.3d at 797 (holding that under the circumstances, the unclean hands defense did not bar injunctive relief based on trade secrets misappropriation); *Telex Corp. v. Int'l Bus. Machs. Corp.,* 510 F.2d 894, 930 (10th Cir.1975) (holding that where there were no antitrust violations, an unclean hands defense did not apply to bar a trade secrets misappropriation claim); *Wyeth v. Natural Biologics, Inc.,* 2003 WL 22282371, at *24 (D.Minn. Oct.2, 2003) (concluding that the equitable unclean hands defense did not apply to a trade secrets misappropriation claim). *Cf. Data Gen.,* 36 F.3d at 1170 (stating that the case did not require the court to determine whether Massachusetts law recognized an unclean hands defense to a trade secrets misappropriation claim); *Nalco Chem. Co. v. Hydro Techs., Inc.,* 149 F.R.D. 686, 695 (E.D.Wis.1993) (permitting discovery related to an unclean hands defense in a trade secrets misappropriation case). There-

fore, because there appears to be no legal authority to support the application of copyright misuse as an affirmative defense to a trade secrets misappropriation claim, and because Princeton Review has not pled sufficient facts to establish copyright misuse, the court will strike the eighth affirmative defense.

### 4. Twelfth Affirmative Defense: Contracts of Adhesion

AAMC moves to strike Princeton Review's twelfth affirmative defense, which asserts that the MCAT Prohibitions are unenforceable contracts of adhesion. As discussed above in Section II.B.1, Princeton Review has pled facts sufficient to state a claim that the MCAT Prohibitions are contracts of adhesion. Although AAMC argues that the MCAT Prohibitions are not unconscionable, this argument goes to the merits of the affirmative defense and at this stage of the proceedings, does not establish that the affirmative defense is "insufficient" under FED. R. CIV. P. 12(f). Accordingly, the court will deny AAMC's motion to strike the twelfth affirmative defense.

### 5. Fourteenth Affirmative Defense: Statute of Frauds

Finally, AAMC moves to strike Princeton Review's fourteenth affirmative defense, which claims that AAMC's fraud claim is barred by the statute of frauds.[11] AAMC argues that Princeton Review cannot assert and pursue an affirmative defense that is only viable to a breach of contract allegation when AAMC has pled a fraud-not breach of contract-claim. A

---

11. D.C.Code § 28–3502 provides, in relevant part:

An action may not be brought ... upon an agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action is brought, or a memorandum or note thereof, is in writing, which need not state the consideration and signed by the party to be charged therewith or a person authorized by him.

*Id.*

statute of frauds defense is proper only when a plaintiff has alleged a breach of contract claim. *See* D.C.Code Ann. § 28–3502. Princeton Review argues that its statute of frauds defense should not be stricken because AAMC's fraud claim is "more accurately" characterized as a breach of contract claim. Def.'s Opp'n at 30. The court disagrees. Princeton Review cites no legal authority to support its argument that the court should consider AAMC's fraud claim as a breach of contract claim. Accordingly, the court will strike Princeton Review's fourteenth affirmative defense.

### III. CONCLUSION

For the foregoing reasons, AAMC's motion to dismiss counterclaims and to strike affirmative defenses must be granted in part and denied in part. Accordingly, it is this 22nd day of June, 2004, hereby:

**ORDERED**, that AAMC's motion to dismiss counterclaims and to strike affirmative defenses is **GRANTED** in part and **DENIED** in part. Princeton Review's counterclaims are **DISMISSED** to the extent that they are based on copyright misuse and violations of the First Amendment and public policy. Princeton Review's fifth, seventh, eighth, and fourteenth affirmative defenses are **STRICKEN**. AAMC's motion is denied in all other respects.